EMMA BATTISTELLI *v.* PHILIP CORSO

SUPERIOR COURT  FAIRFIELD COUNTY  FILE NO. 145995
AT BRIDGEPORT

Memorandum filed February 8, 1973

*Rubens & Saffo* and *Frank J. Riccio,* both of Bridgeport, for the plaintiff.

*Blawie & Belinkie* and *Frederick F. Ehrsam,* both of Bridgeport, for the defendant.

MIGNONE, J.  The plaintiff was the owner of certain premises located on Mill Hill Avenue in Bridge-

port. The defendant, a practicing surgeon in Bridgeport, desired to purchase the plaintiff's property provided it could be zoned for use for medical offices.

The plaintiff was approached by Angelo Memoli, a real estate dealer in Bridgeport who had been previously contacted by the defendant, with regard to selling her property to the defendant. A document entitled "Memorandum Receipt," dated May 21, 1971, and signed by both the plaintiff and the defendant, stated that the plaintiff had received of the defendant the sum of $1000 as a deposit for the purchase of the property in issue, for the full purchase price of $75,000. The document set out that the sale was to be consummated on or before "as agreed by the Buyer's and Seller's Atty." A balance of deposit of $6500 was to be paid on or before the signing of the contract of sale, which was to be made subject to the following terms and conditions: "Obtaining zoning approval for construction of medical building on site." At the bottom of the document, under the caption "Terms and Conditions Of The Above Memorandum Accepted," the signature of Emma Battistelli appears as seller and that of Phillip P. Corso as purchaser. On the right and left sides are written the names of Frank Riccio as attorney for the plaintiff and Coles and O'Connell as the lawyers representing the defendant. No other contract or agreement or document for consummation of this sale was ever signed by the parties. At the time of the signing of the "Memorandum Receipt," $1000 was paid by the defendant as a sale deposit to Angelo Memoli, of Memoli and Memoli, the real estate broker.

The real estate agent, Memoli, testified in behalf of the plaintiff as to the preparation and signing of the "Memorandum Receipt." He stated that, as set out in it the time within which the sale was to be

consummated was to be agreed upon by the buyer's and seller's attorneys and that he had written in the names of the attorneys. Memoli testified that he went with the defendant to the offices of Coles and O'Connell to discuss the zoning change situation but that this law firm did not act for the defendant.

Attorney Frank Riccio testified that he was engaged as the plaintiff's attorney shortly after the document had been signed. He tried to communicate with the law office of Coles and O'Connell in the first week in June, 1971, to determine whether that office represented the defendant. On June 14, 1971, he sent a letter to the defendant, a copy of which was admitted in evidence, requesting him to instruct the law firm which was to represent him in the execution of the "necessary real estate contracts" to contact Attorney Riccio. He received no response from either the defendant or a lawyer representing him, but on or about July 9 he received a telephone call from the office of Coles and O'Connell stating that it did not represent the defendant.

Attorney Riccio did ascertain shortly thereafter that Attorney Frank F. Ehrsam, Sr., represented the defendant, and Riccio submitted to Ehrsam a contract of sale, prepared by Riccio and dated July 29, 1971, which made the sale contingent upon obtaining the zoning change permitting a use for professional medical offices. The contract provided that the buyer agreed to submit, prior to October 1, 1971, the necessary applications and plans to the zoning boards and diligently to pursue the application; and that if the buyer's application was granted and no appeal was taken, the buyer was obligated to consummate the purchase of the property within 120 days of the granting of the zone change. This agreement further provided that in the event the application of the buyer for a zone change was

denied he was to have no rights of appeal from that decision. If, however, his application was granted and an appeal was to be taken from the favorable grant, the buyer then was to have an opportunity to defend the grant of the zoning change in the Court of Common Pleas.

The plaintiff's attorney, Riccio, testified that Attorney Ehrsam called him approximately ten days after receiving a copy of the proposed contract of sale and told him that there were many zoning problems involved and that his client was entitled to the privilege of appealing if a change of zone was denied. Attorney Ehrsam sent a letter to Riccio dated August 23, 1971, representing that it was physically impossible to get all of the necessary zoning data ready to file an application in behalf of the defendant by October 1, 1971. The letter set forth that the defendant was particularly concerned with the language of the proposed sales agreement of July 29, 1971, specifying that, if on appeal the favorable grant of a zone change was reversed, then the agreement to buy would be null and void and all moneys would be returned to the buyer. Attorney Ehrsam further pointed out that a court appeal "can tie up a piece of property in litigation for at least two or three years."

On August 30, 1971, Riccio responded to Ehrsam's letter of August 23 and referred to the already incurred delay in proceeding with the application for a zoning change after the "Memorandum Receipt" agreement had been entered into on May 21, 1971. Riccio's letter states that his client would be willing to try to effectuate a sale without contingencies, the purchase price to be renegotiated. And he further testified that he did not hear from Ehrsam thereafter until late October, 1971, when an offer of $62,000 for the property without contingencies was made.

On October 29, 1971, the defendant, without notice to the plaintiff, caused the so-called "Memorandum Receipt" binder to be placed on the land records in Bridgeport. After the negotiations for a sale without contingencies fell through, the real estate agent, Memoli, on December 16, 1971, sent the defendant a check for $1000 as reimbursement for the deposit made on May 21, 1971. On January 26, 1972, the plaintiff, through Memoli's efforts as broker, executed another binder agreement to sell the same property to a different purchaser for $80,000, subject to obtaining zoning approval. The plaintiff was unable to proceed further with any sale because of the existence of the binder on the town clerk's records. Although the defendant accepted and cashed the $1000 check, he has nevertheless refused to the date of trial to give the plaintiff a release of the binder placed on the land records.

The essential fact remains that at no time was an application for a change of zone ever made to the zoning board; and the parties were never able to agree upon a sale without a zoning approval contingency clause.

The facts in this case illustrate the difficulties that parties can become enmeshed in without legal assistance in drawing up documents. But, to begin with, it must be noted that the plaintiff is an elderly widow without experience in the buying or selling of real estate. On the other hand, the defendant, a surgeon, although without legal qualifications, is a person of greater experience with relation to real estate matters. The "Memorandum Receipt" was drawn up by the real estate agent Memoli, whom the defendant repeatedly claimed in his testimony to have been engaged as his agent, although any commission for the sale of property was to be paid by the seller.

As heretofore stated, the "Memorandum Receipt" was the only document ever signed by the parties. It is vulnerable with relation to the date by which the sale was to be consummated, since in the appropriate line where a date was to be inserted only the notation "as agreed by the Buyer's and Seller's Atty" appears. Does it meet the requirements of the Statute of Frauds? In *East Haven* v. *New Haven,* 159 Conn. 453, 461, the court again reiterated the requirements to be set forth in a memorandum of sale to satisfy the Statute of Frauds. It states: "It must state the contract between the parties with such certainty that the essentials of the contract can be determined from the memorandum itself without the aid of parol proof, either by direct statement or by reference therein to some other writing or thing certain; and these essentials must at least consist of the subject of the sale, the terms of it and the parties to it, so as to furnish evidence of a complete agreement." The time within which the sale was to be consummated is not set forth with any clarity. At no time was there any agreement between the buyer's and seller's attorneys as to the time limit within which the sale was to be effectuated. Even an option to purchase is subject to the Statute of Frauds. *Pigeon* v. *Hatheway,* 156 Conn. 175.

Aside from the issue of failure to comply with the Statute of Frauds is the question of what duties and obligations were intended to be assumed by the parties. It is significant to note that the defendant refused to sign the contract of sale prepared by the plaintiff's attorney, so the "Memorandum Receipt" is the sole basis of the parties' respective duties and obligations. The question must be asked, Can the "Memorandum Receipt" agreement be considered a final one, encompassing all the terms which the parties intended to introduce, or were material terms

left for future negotiation and settlement, in which case there would be no final meeting of the minds? See *Stephan* v. *Maloof*, 274 Cal. App. 2d 843, 847. "The intention of the parties manifested by their words and acts is essential to determine whether a contract was entered into and what its terms were. . . . This determination requires a finding of mutuality of obligation." *Hess* v. *Dumouchel Paper Co.*, 154 Conn. 343, 347.

The evidence clearly shows that the parties were considering and negotiating for a sale without relation to obtaining a zoning change. Even assuming that the contract survived these pitfalls, what rights did the defendant obtain thereunder? The "Memorandum Receipt" provided that the sale was contingent upon the obtaining of a zoning approval for construction of a medical building on the site. There is no question that this was to be done by the defendant. On his own admission, he never even spoke to the plaintiff personally until after July 29, 1971, when the plaintiff's attorney sent the proposed contract of sale to the defendant's attorney, Ehrsam. Assuming that the defendant had acquired a legal right to purchase this property subject to obtaining a zoning change, the whole crux of the matter then deals with the issue of whether he proceeded to act with reasonable dispatch to secure the zoning approval. The defendant's testimony was that he had many conferences with various architects and engineers to discuss plans to be presented with an application for the zone change. As of December 16, 1971, however, almost seven months after the "Memorandum Receipt" was executed, he had not filed any application. On that date a check in the amount of $1000 was sent to him by the real estate agent, Memoli, as reimbursement for the $1000 deposit he had made on May 21, 1971. Although under no

compulsion to do so, he accepted and cashed this check. And despite the receipt of this money he still claims to have legal rights under the "Memorandum Receipt" agreement and has refused to release the copy thereof which he filed on the land records.

Performance of the terms of a contract, if a specific time is not set out, must occur within a time that is reasonable under all the circumstances, and this is always of the essence. 3A Corbin, Contracts § 716, p. 366. Certainly there was an implied promise that the defendant would make an application for a zone change within a reasonable time. *Michael* v. *Towers*, 253 Md. 114.

There do not appear to be any decisions of our Connecticut Supreme Court which deal with the issue of a sale of real estate subject to obtaining a zoning change. A number of decisions on the general subject are collected in various American Law Reports annotations. See note, "Effect of provision in real-estate option or land sale contract making the contract subject to zoning or rezoning of the property," 76 A.L.R.2d 1195. A recent annotation in 39 A.L.R.3d 362, "Zoning—Effect on Parties to Sale Contract," is the most comprehensive. Section 7 thereof discusses various cases based on the express agreement of the parties for renewal or relaxation of a zoning restriction. No one of the cases therein discussed presents a comparable fact situation or involves the precise legal issues herein. -A case with considerable comparability to the instant matter is *Allview Acres, Inc.* v. *Howard Investment Corporation,* 229 Md. 238, 244, where the court held that the defendant did not prove " 'activity reasonably calculated to obtain the approval by action or expenditure not disproportionate in the circumstances.' "

The court is compelled to hold, assuming that the "Memorandum Receipt" agreement is valid, that the defendant had abandoned and released any rights he might have thereunder by his unequivocal and absolute action in accepting the return of the $1000 deposit. This buttresses the plaintiff's claim that the defendant had failed to perform his obligations under the contract, and warrants the inference that the defendant abandoned any rights he might have thereunder. Under such circumstances, the plaintiff was justified in considering the contract rescinded. See *M. Shapiro & Son Construction Co.* v. *Battaglia,* 138 Conn. 238, 244; *Robinson* v. *Johancsik,* 133 Conn. 67, 69. As is pointed out in *Yale Co-operative Corporation* v. *Rogin,* 133 Conn. 563, 568, " '[m]utual assent to abandon a contract . . . may be inferred from the attendant circumstances and conduct of the parties.' " This court finds that there was a mutual release of obligations assumed by the parties under the "Memorandum Receipt" and that this constituted sufficient consideration for rescission of the contract. Ibid.

In conclusion, this court orders and enjoins the defendant forthwith, subject to a penalty of $5000 on failure to comply, to release the "binder" ("Memorandum Receipt") from the land records. The court, however, must find that the plaintiff has failed to sustain her burden of proof to show that in placing the "binder" upon the land records the defendant did so with the intent and purpose of "slandering the title" to the plaintiff's land under General Statutes § 47-33j. The definition of the word "slander" requires that there be an "utterance of false charges or misrepresentations which defame and damage reputation." Webster, Third New International Dictionary. Accordingly, no damages under § 47-33j are allowed.

Judgment may enter for the plaintiff accordingly.