CONRAD JONES ET AL. *v.* WALTER F. O'CONNELL ET AL.
(10789)

SPEZIALE, C. J., PETERS, HEALEY, SHEA and GRILLO, Js.

Argued January 12—decision released April 5, 1983

*Dennis N. Garvey,* with whom were *Andre L. Nagy* and, on the brief, *Barbara L. Cox,* law student intern, for the appellants (plaintiffs).

*William T. Cahill,* with whom, on the brief, was *Cuyler M. Overholt,* for the appellees (defendants).

PETERS, J.  This case concerns the right of owners of a cooperative apartment building to impose restraints on the right to alienate one of the cooperative apartments.  The plaintiffs, Conrad Jones and Florence McNulty, who had entered into a con-

tract of sale for a cooperative apartment, brought suit against the defendants, Walter F. O'Connell, Pauline F. O'Connell, Margaret Cavanaugh, Christopher H. Smith and Harbor House, Inc., to enjoin the defendants' disapproval of the contemplated sale. The plaintiffs also sought monetary damages from the individual defendants for their tortious interference with the plaintiffs' contract. After a trial to the court, judgment was rendered for the defendants and the plaintiffs have appealed.

The underlying facts are undisputed. In 1975, the defendant Walter F. O'Connell transferred property at 252-58 Main Street, Southport, to a newly formed Connecticut corporation, the defendant Harbor House, Inc., so that Harbor House might hold the property as a cooperative residential apartment house. The defendant Christopher H. Smith, an attorney, prepared the appropriate documentation, consisting of a memorandum of offering for the stock, proprietary leases for the individual apartments, and by-laws for the corporation. From the time of the first meeting of the corporation, the Harbor House directors have been the individually named defendants, Walter and Pauline O'Connell, Christopher Smith, and Margaret Cavanaugh.

In 1979, just before the present controversy arose, the leasehold interests in Harbor House, manifested by ownership of stock and assignments of proprietary leases, were distributed among the defendants and the plaintiffs as follows: The plaintiff Florence McNulty owned 11.2 percent of the stock and was the lessee of apartment 1A. The plaintiff Conrad Jones owned 25.5 percent of the stock and was the lessee of apartment 2. The defendant Margaret Cavanaugh owned 25.5 percent of the stock and was the lessee of apartment 3. The

defendant Walter O'Connell owned 37.8 percent of the stock and was the lessee of apartments 1B, 1C and 4.

On November 5, 1979, the plaintiffs entered into a written contract for Florence McNulty to sell her stock in Harbor House and to assign her proprietary lease in apartment 1A to Conrad Jones. This contract of sale was expressly made "subject to the approval of the directors or shareholders of the Corporation as provided in the Lease or the corporate by-laws." Had the transfer to Jones been approved, he would have become the owner of 36.7 percent of the Harbor House stock and the lessee of two apartments, one underneath the other. Jones was interested in acquiring additional living space for his family because in 1979, one year after his acquisition of apartment 2, he had remarried and become the stepfather of two daughters, aged 9 and 13.

Any lessee's right to sell shares and to assign a proprietary lease in Harbor House is expressly made conditional upon the consent of the Harbor House board of directors, or of at least 65 percent of the corporation's outstanding shares, by virtue of separate and somewhat inconsistent provisions in the Harbor House documentation. Under the memorandum of offering, assignments are to be approved only for persons of suitable "character and financial responsibility." Under the proprietary lease, however, consent to assignments can be granted or withheld "for any reason or for no reason." The corporate by-laws are silent as to what may constitute an adequate basis for withholding consent to an assignment.

The plaintiffs were unable to procure the requisite consent for their contemplated transfer. First

the board of directors and later the stockholders of Harbor House refused to approve their contract of sale. Subsequent to this disapproval, Walter O'Connell and Margaret Cavanaugh offered to purchase the stock and the lease of apartment 1A from Florence McNulty, an offer she refused because of her commitment to Conrad Jones. The present litigation then ensued.

In the trial court, after an exhaustive examination of the plaintiffs' claims, judgment was rendered for the defendants. The court found that the defendants had acted reasonably and in good faith, and that the plaintiffs had failed to prove their various claims of wrongful interference with their contract. Each of these conclusions is challenged on this appeal.[1] We find no error.

## I

The plaintiffs' principal claim of error asserts that the evidence presented at trial fails to support the trial court's conclusion and finding that the defendants acted reasonably in disapproving the transfer of the stock and the leasehold interest appurtenant to apartment 1A. Before we reach that issue, however, we must first determine the standard by which the propriety of the defendants' withholding of their consent is to be measured.

Although this court has not previously confronted the question of restraints on alienation of property interests in cooperative residential apartments, we have addressed the legality of such restraints on alienation in related contexts. On the

---

[1] At trial, the plaintiffs also pursued a count charging the defendants with violation of General Statutes § 47a-2a (now § 46a-64a) enacted in 1980, which forbids discrimination against families with children. No appeal has been taken from the trial court's determination that this statute should not be given retroactive effect.

one hand, in cases involving the construction of wills involving the devise of both real and personal property, we have noted that "[t]he law does not favor restraints on alienation and will not recognize them unless they are stated 'in unequivocal terms'; *Williams* v. *Robinson,* 16 Conn. 517, 523 [1844]"; *Romme* v. *Ostheimer,* 128 Conn. 31, 34, 20 A.2d 406 (1941); and that "[i]t is the policy of the law not to uphold restrictions upon the free and unrestricted alienation of property unless they serve a legal and useful purpose." *Peiter* v. *Degenring,* 136 Conn. 331, 336, 71 A.2d 87 (1949); *Colonial Trust Co.* v. *Brown,* 105 Conn. 261, 278–81, 135 A. 555 (1926). See generally Manning, "The Development of Restraints on Alienation Since Gray," 48 Harv. L. Rev. 373, 401–406 (1935), and Schnebly, "Restraints Upon the Alienation of Legal Interests," 44 Yale L.J. 961, 1186, 1380 (1935). On the other hand, in a case involving a lease provision requiring that a lessor consent in writing to the assignment of a commercial lease, we have cited with approval the majority rule that "the lessor may refuse consent and his reason is immaterial." *Robinson* v. *Weitz,* 171 Conn. 545, 549, 370 A.2d 1066 (1976), relying on *Segre* v. *Ring,* 103 N.H. 278, 279, 170 A.2d 265 (1961). See also *B & R Oil Company, Inc.* v. *Ray's Mobile Homes, Inc.,* 139 Vt. 122, 123, 422 A.2d 1267 (1980); 1 Friedman on Leases (1974) § 7.304a. But see 2 Restatement (Second), Property (Landlord and Tenant) § 15.2(2) (1977); 1 Am. Law of Property (Lezar 1952) § 3.58.

An assessment of how to apply these competing principles to restraints on the alienation of cooperative apartments must take account of the reality that cooperative ownership is in many ways sui

generis, a legal hybrid. For some purposes, the "owner" of such an apartment has legal title and an interest in real property, while for other purposes his rights as a tenant of the corporation and a holder of its stock more closely resemble an interest in personal property. *Alexy* v. *Kennedy House, Inc.,* 507 F. Sup. 690, 697 (E.D. Pa. 1981); *Sanders* v. *The Tropicana,* 31 N.C. App. 276, 281, 229 S.E.2d 304 (1976); see also 2 Tiffany, The Law of Real Property (3d Ed.) §§ 483.75, 483.76 and 483.78 (1982 Cum. Sup.); Bratt, "Cooperative Apartments: A Survey of Legal Treatment and an Argument for Homestead Protection," 1978 U. Ill. L.F. 759, 770–78 (1978).

As did the trial court, we deem it appropriate to take a middle road in enforcing provisions that impose conditions upon the transfer of the hybrid cooperative apartment. Provisions conditioning transfers upon the consent of the cooperative corporation are neither automatically void nor automatically valid. If the provisions are stated unequivocally, and serve a legal and useful function, i.e., the reasonable protection of the financial and social integrity of the cooperative as a whole, they are not barred by our policy disfavoring restraints on alienation. Such provisions are permissible, however, only insofar as they are limited to the purpose for which they are designed. Unlimited consent clauses, permitting disapproval of transfers for any reason whatsoever, or for no reason, constitute illegal restraints because they fail sufficiently to recognize the legitimate interest of the holder of a leasehold to enjoy reasonable access to a resale market. These distinctions are consistent with the holdings of the majority of courts in other jurisdictions that have addressed

this issue. See, e.g., *Mowatt* v. *1540 Lake Shore Drive Corporation,* 385 F.2d 135, 136–37 (7th Cir. 1967); *Alexy* v. *Kennedy House, Inc.,* 507 F. Sup. 690, 699 (E.D. Pa. 1981); *Logan* v. *3750 North Lake Shore Drive, Inc.,* 17 Ill. App. 3d 584, 589–91, 308 N.E.2d 278 (1974); *68 Beacon Street, Inc.* v. *Sohier,* 289 Mass. 354, 360–62, 194 N.E. 303 (1935); *Sanders* v. *The Tropicana,* 31 N.C. App. 276, 282, 229 S.E.2d 304 (1976). Contra, in part, *Weisner* v. *791 Park Avenue Corporation,* 6 N.Y.2d 426, 434, 190 N.Y.S.2d 70, 160 N.E.2d 720 (1959); see also Bratt, supra, 783–85; note, "Co-operative Apartment Housing," 61 Harv. L. Rev. 1407, 1416–20 (1948); Tiffany, supra, § 483.79.

Applying these principles to the provisions of the Harbor House documentation, we agree, for two reasons, with the trial court's conclusion invalidating the clause in the proprietary lease purporting to permit consent to an assignment of the lease to be granted or withheld "for any reason or for no reason." As a matter of interpretation, that clause is not unequivocal, because it must be read conjointly with the memorandum of offering which limits the authority to disapprove assignments to cases in which the transferee is a person of unsuitable "character and financial responsibility." Given our reluctance to enforce restraints on alienation, the limited clause in the memorandum of offering must prevail over the unqualified consent clause in the proprietary lease. As a matter of public policy, furthermore, we hold, as do the authorities cited above, that only consent clauses reasonably tailored to the protection of the legitimate interests of the cooperative serve the kind of "legal and useful purpose" which protects them from avoidance as illegal restraints on alienation.

We must turn then to the plaintiffs' assertion that the trial court, on the evidence before it, erred in determining that the defendants acted reasonably, in light of the interests of the cooperative as a whole, in refusing consent to the transfer of apartment 1A. Although the defendants, at the time of their vote as directors and as stockholders, had specified no reasons for their withholding of consent, they did provide the court at trial with the propositions upon which they had relied. No special issue has been raised on this appeal that the delay in notifying the plaintiffs of the reasons for the denial of consent materially prejudiced the plaintiffs.

The trial court's memorandum of decision sets forth the reasons given by the defendants for withholding consent to the contemplated transfer. These reasons have nothing to do with the financial responsibility of Jones, which is conceded. Instead, they focus on Jones' tenancy of apartment 2 and upon functional consequences of a combined tenancy for apartments 2 and 1A. The defendants claimed that Jones was responsible for a recurrently unlocked front hall entrance door, that Jones had misled the defendants about his intended use of apartment 2, that Jones had behaved abrasively at a corporation meeting considering the Harbor House budget, that Jones and his guests had misused the cooperative parking lot, and that Jones' stepdaughters were noisy. The trial court found some of these reasons unproven, and the others of minor significance. The defendants also maintained that the character of the building would be destroyed by having one family occupy apartments on the first and second floors connected for purposes of access only by the common stairway for

the building as a whole. This ordinary everyday use of the two apartments would make the stairway a part of the two affected apartments in such a way as to interfere with its common use by the other tenants, who had an interest in the preservation of the building as a cooperative with six separate apartments. Relying principally on this structural reason, the trial court concluded that the defendants "had reasons to deny consent which were based on character, and the purposes and interests of their co-operative."

The plaintiffs argue that this structural reason is insufficient in light of the Harbor House by-laws that specifically authorize the board of directors to permit an owner of one or more apartments "to combine all or any portions of any such apartments into one or any desired number of apartments; and . . . to incorporate other space in the building not covered by any proprietary lease, into one or more apartments covered by a proprietary lease . . . ." The by-laws do not, however, require combinations of apartments to be approved, particularly where impairment of common access would be likely to result from the combination. The trial court did not err in finding that the structural problem, arguably aggravated by the irritations associated with Jones' occupation of apartment 2, furnished a basis for denying consent that was reasonably rooted in the purposes and interests of the cooperative apartment living and that reasonably served to protect the financial and social integrity of the cooperative as a whole.

## II

The determination that the defendants acted reasonably in the furtherance of reasonable cooperative purposes when they withheld their consent

to the transfer of apartment 1A deprives the plaintiffs' other claims of error of their necessary factual underpinnings. These claims can therefore be discussed more succinctly.

## A

The plaintiffs claim that the defendants as directors of Harbor House violated their statutory duty, under General Statutes § 33-313 (d), to act "in good faith . . . and with such care as an ordinarily prudent person in a like position would use under similar circumstances."[2] See generally *Katz* v. *T. H. Canty & Co.*, 168 Conn. 201, 207, 362 A.2d 975 (1975); *Osborne* v. *Locke Steel Chain Co.*, 153 Conn. 527, 534, 218 A.2d 526 (1966); *Massoth* v. *Central Bus Corporation*, 104 Conn. 683, 689, 134 A. 236 (1926); *Mallory* v. *Mallory Wheeler Co.*, 61 Conn. 131, 139, 23 A. 708 (1891); Cross, Corpora-

[2] General Statutes § 33-313 (d) provides: "A director shall perform his duties as a director, including his duties as a member of any committee of the board upon which he may serve, in good faith, in a manner he reasonably believes to be in the best interests of the corporation and with such care as an ordinarily prudent person in a like position would use under similar circumstances. In performing his duties, a director shall be entitled to rely on information, opinions, reports or statements, including financial statements and other financial data, prepared or presented by (1) one or more officers or employees of the corporation whom the director reasonably believes to be reliable and competent in the matters presented, (2) counsel, public accountants or other persons as to matters which the director reasonably believes to be within such person's professional or expert competence, or (3) a committee of the board upon which he does not serve, duly designated in accordance with a provision of the certificate of incorporation or the bylaws, as to matters within its designated authority, which committee the director reasonably believes to merit confidence, but he shall not be considered to be acting in good faith if he has knowledge concerning the matter in question that causes such reliance to be unwarranted. A person who performs his duties in accordance with this subsection shall be presumed to have no liability by reason of being or having been a director of the corporation."

tion Law in Connecticut (1972) § 6.8. They take no issue with the trial court's statement that a cooperative corporation like Harbor House does not have "the usual corporate aim of earning a profit and that its purposes are comfortable living in a comfortable environment." Nonetheless they argue that the trial court erred in concluding that the defendants had sustained their burden of proving that they had acted in good faith, because the defendants allegedly overlooked their duty to protect the plaintiffs' legitimate interests, as minority stockholders, in the purchase and sale of the apartment in question.

The plaintiffs do not assert that their interests as minority stockholders, as a matter of law, had to be afforded an absolute priority over competing interests of other Harbor House stockholders. The vice which they claim requires reversal is that the defendants' "groundless justifications . . . which the trial court accepted as reasonable" cannot demonstrate good faith and are outweighed by the injury to the rights of the two minority shareholders. The trial court, however, in finding reasonable the defendants' withholding of consent, expressly found that their proffered justifications were not groundless within the context of a cooperative residential building. We have sustained that finding. Since on this appeal the plaintiffs have pointed to no other evidence indicative of a breach of the defendants' fiduciary obligations,[3] the trial court's conclusion must stand.

---

[3] The plaintiffs have not challenged in this court the finding of the trial court that they had failed to prove that the defendants were motivated by a desire to secure the McNulty apartment for themselves.

The record contains no support for the plaintiffs' suggestion that McNulty would encounter the same disapproval from the defendants with regard to any prospective purchaser for her apartment.

## B

The plaintiffs claim that the defendants tortiously interfered with the plaintiffs' contract for the purchase of apartment 1A. A cause of action for tortious interference with a business expectancy requires proof "that the defendant was guilty of fraud, misrepresentation, intimidation or molestation; *Busker* v. *United Illuminating Co.,* 156 Conn. 456, 461, 242 A.2d 708 [1968]; *Skene* v. *Carayanis,* 103 Conn. 708, 715, 131 A. 497 [1926]; or that the defendant acted maliciously. *Goldman* v. *Feinberg,* 130 Conn. 671, 675, 37 A.2d 355 [1944]." *Kecko Piping Co.* v. *Monroe,* 172 Conn. 197, 201–202, 374 A.2d 179 (1977). It is not essential to such a cause of action that the tort have resulted in an actual breach of contract, since even unenforceable promises, which the parties might voluntarily have performed, are entitled to be sheltered from wrongful interference. *Harry A. Finman & Son, Inc.* v. *Connecticut Truck & Trailer Service Co.,* 169 Conn. 407, 415, 363 A.2d 86 (1975); *Goldman* v. *Feinberg,* supra, 674; *Skene* v. *Carayanis,* supra, 714; Prosser, Torts (4th Ed.) § 129, p. 932. In the present case, the plaintiffs claim that the defendants maliciously and intentionally interfered with the plaintiffs' contract by their unjustified withholding of consent to the transfer and by their offer themselves to purchase apartment 1A.

As we have noted, supra, the trial court did not err in finding that the defendants were justified, in light of the purposes of Harbor House as a cooperative residential building, in witholding their consent to the plaintiffs' contract of transfer. The finding that the defendants acted reasonably is fatal to the plaintiffs' contention that the with-

holding of consent was malicious. The plaintiffs were on notice that any contract of sale would have to contain a condition, as did their contract, that consent to transfer be obtained before the contract could be performed. With such a conditional contract, a reasonable disapproval of transfer does not constitute a tortious interference with contractual rights.

The trial court further found that the defendants O'Connell and Cavanaugh themselves offered to purchase apartment 1A, at a time subsequent to the Harbor House disapproval of the transfer to Jones. While the trial court was in error in not expressly considering this aspect of the plaintiffs' claim of tortious interference, the claim nonetheless cannot succeed. Once it had become clear that the McNulty-Jones sale could not go forward, it was not improper for the defendants to make an offer motivated not by malice toward Jones but, as the court found, by a wish not to see McNulty financially harmed. This finding makes it clear that the plaintiffs have not sustained their burden of proving tortious interference.

## C

The plaintiffs claim that the defendants acted with malice and with wanton disregard of the plaintiffs' contractual rights when the defendants denied consent to the transfer of apartment 1A. The plaintiffs argue that the defendants so repeatedly manifested their personal animus against the plaintiff Jones that the defendants had no just cause for denying their consent to the proposed transfer. This claim, too, cannot prevail in light of the trial court's findings of fact to the contrary.

### D

The plaintiffs claim that they are entitled to recover attorney's fees as punitive damages for the defendants' malicious and intentional interference with their contract for the sale of apartment 1A. Since we have concluded that the plaintiffs have not established the underlying claims for wrongful interference, this ancillary claim need not be considered.

### E

The plaintiffs claim that the defendant directors unlawfully engaged in a civil conspiracy to frustrate and prevent performance of the contract of sale for apartment 1A. An essential element of a civil action for conspiracy is that the alleged conspirators have combined "to do a criminal act or an unlawful act or a lawful act by criminal or unlawful means." *Williams* v. *Maislen,* 116 Conn. 433, 437, 165 A. 455 (1933). The illegal acts upon which the plaintiffs rely to establish a civil conspiracy are the very acts which we have already found not to be improper. In the absence of any independent basis for this claim, our discussion of the merits of the underlying claims is dispositive of this claim as well.

There is no error.

In this opinion the other judges concurred.