[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT
In this case the plaintiff Opel Inc. brought suit against two property owners Alphonse and Sue Ellen Levesque, John and Kathleen Olenick, prospective purchasers of property in a development owned by the plaintiff. The plaintiff has also sued the Levesque lawyer, Ernest Cotnoir, Attorney Edwin Higgins III, who is in the same firm as Attorney Cotnoir and represents the Olenicks, and Attorney Nicholas Longo who was contacted by people who had been interested in purchasing property in the development. All the defendants have filed separate motions for summary judgment which raise common questions of law so that this memorandum will address all the motions for summary judgment. It should be noted that the plaintiffs withdrew their case against the Olenicks several weeks before the hearing on these motions.
The Levesque motion lays out a helpful chronology of events which with a few additions sets forth the facts underlying this matter. These facts do not appear to be in dispute and the CT Page 8212 affidavit submitted by the plaintiff does not really contest them.
In December of 1987 Russell Lehman, Jr. conveyed title to Blackmer Downs Associates of a tract of land in Thompson, Connecticut which contained 11 subdivision lots. In September of 1988 the Levesques signed a sales agreement to buy lot 10 which already had a house built on it. Blackmer Downs Associates on December 29, 1988 recorded a declaration of restrictions and covenants on the land records which covered all 11 lots including the Levesque Lot #10. The Levesques by affidavit allege that it had been represented to them during their purchase negotiations that such a declaration was going to be recorded on the land records. They further claim that their understanding was that their lot was not to be included in the declaration and it was included inadvertently and by error.
On November 29, 1988 Blackmer Downs Associates conveyed title to Blackmer Downs Associates, Inc. which on December 2 conveyed title of Lot 10 to the Levesques. In May of 1989 title of Lots 1 — 9 and Lot 11 was conveyed to the plaintiff Opel Inc., Lot 10 was specifically excluded. During the summer of 1989 Opel Inc. approached the Levesques for their assent in reducing the square footage requirements in the previously mentioned declaration and the Levesques claim that this was the first time they became aware that their lot was included in the declaration. Negotiations on the matter continued through the summer and fall with both sides making proposals and counter proposals. The Levesques retained Attorney Cotnoir try to resolve this dispute with the plaintiff.
On October 16, 1989 the plaintiff filed a corrected declaration of restrictions and covenants on the land records reducing the square footage of the houses to be built on the tract and this "corrected declaration" included the Levesque property, Lot 10.
On December 28, 1989 the Olenicks signed a sales agreement with the plaintiff to purchase Lot 1. Uncontroverted affidavits submitted Attorney Higgins the by the Olenicks and indicate Olenicks selected their lawyer from a list supplied by People's Bank and the relationship began with Attorney Higgins not knowing where the property was located. The Olenicks and Levesques were made aware of the fact that lawyers from the same firm represented them on their dealings with the plaintiff. CT Page 8213
On January 16, 1990 the Levesques filed an affidavit and notice on the land records in which they stated the plaintiff's amended declaration put on those records the previous October by the plaintiff was filed without their knowledge or consent.
Attorney Longo's connection with this case is that in March 1990 he was contacted by prospective purchasers of a lot on the plaintiff's tract. Knowing of the Levesque and Olenick disputes with the plaintiff he declined to take the case or even refer these people to another lawyer and told them why he was acting in this manner.
The plaintiff filed suit in April of 1990.
The court will discuss the motions as they relate to each count and as they relate to each of the defendants. The court will also refer to the affidavit and brief filed by the plaintiff in its discussion to determine whether there are any genuine issues of fact — if so, of course, a motion for summary judgment would not be appropriate. Dougherty v. Graham, 161 Conn. 248
(1971). Practice Book § 380 makes clear that a party opposing these motions should file affidavits if it wishes to claim a factual issue exists. Conclusory allegations in the pleadings will not serve the purpose nor affidavits based on conjecture and inadmissible evidence or hearsay.
First Count
The first count the alleges Levesques, their attorney Cotnoir, Attorney Higgins and Attorney Longo conspired to violate a term of the original declaration of restrictions and covenants which in paragraph 4 states that before a "permitted structure" is erected the original owner and its successor, Opel Inc., must approve the plans for such a structure. The complaint refers to a March 26, 1990 letter attached to the complaint from Attorney Cotnoir indicating the Levesques had hired a contractor and intended to erect an addition to their house starting April 2, 1990 to bring their home in compliance with the square footage requirements set out in other portions of the declaration. The letter notes any attempt to settle the dispute would be unlikely if the addition was put on the house since this supposedly would obviate any complaint by Opel Inc. that the Levesques couldn't complain about the square footage requirements of the declaration when their home itself was not in compliance with that CT Page 8214 requirement.
The relief demanded by the plaintiff is a request for "a temporary and permanent injunction," restraining the defendants from violating paragraph 4 of the above mentioned declaration. Nothing before the court by way of letter, affidavit or any other exhibit indicates Attorney Higgins had anything to do with writing this letter, that he knew about it or that he had anything to do with a conspiracy to create it or send it. That he was in the same firm as Cotnoir will not involve him in a conspiracy theory.
There is not even the latter connection as regards Attorney Longo. He wasn't even approached by the completely unrelated prospective purchasers until two days after this letter was written according to his uncontradicted affidavit.
It is also difficult to understand how Attorney Cotnoir could be subject to a claim for the injunctive relief requested. In the letter of March 26, 1990 he was communicating to counsel for the plaintiff what his clients at that point were intending or planning to do. Apart from any advice he might have given to the Levesques, no affidavits filed have alleged or could possibly allege that he had himself planned the addition, had any power on his own to arrange for it and no one has suggested that he is in the construction business. In any event, the basis of the requested relief is a conspiracy theory and the uncontroverted facts before the court establish no basis for such a claim. There is no evidence that these attorneys conspired with each other to do anything even if the letter written by Attorney Cotnoir can be categorized as threatening action by his clients that they had no right to take. The motions of all defendants as to this count are granted.
Second Count
It is difficult to ascertain the legal purport of the second count. It lies against all the named defendants including the Olenicks, that much seems clear. It also appears to assert an action for civil conspiracy against all these people and seems to focus on various negotiating positions taken by the Levesques during the attempt to resolve the dispute with the plaintiff and these and other acts are claimed to have tortiously interfered with its business. CT Page 8215
In our state an essential element of a civil action for conspiracy is that the alleged conspirators have combined to do a criminal act or an unlawful act or a lawful act by criminal or unlawful means. Williams v. Maislen, 116 Conn. 433, 437 . . . (1933)", Jones v. O'Connell, 189 Conn. 648, 662 (1983).
The court has reviewed the complaint and its attached letters and the counter-affidavit filed by Ms. Victoria Kaplan as well as the affidavits submitted by the defendants.
The problem throughout this complaint with the conspiracy theory, before even an analysis is conducted of the purported objects of said conspiracy under Jones v. O'Connell supra, is the simple fact that the plaintiff has not provided a factual basis to indicate anyone conspired with anyone else.
The counter-affidavit of Kaplan is replete with allegations and conclusory statements suggesting the existence of conspirators planning and acting together and by agreement to harm the plaintiff but does not provide any factual basis to support this notion. The closest Ms. Kaplan comes is at pages 5-6 where she states Attorney Cotnoir called Opel Inc. after he heard the Olenicks had received permission to store their furniture in the house, apparently indicating that consummation of the sale to them was imminent. According to Kaplan's affidavit Cotnoir "then called to say that he and defendants Levesque would not permit that move and closing by `lifting' their plan to sue Olenicks for violation of the declaration whichdefendants Higgins and Olenicks in the same law office would go along with, unless Opel Inc. conceded to all of the Cotnoir/Levesque demands" (emphasis added).
The problem with the court's placing any reliance on this assertion is that it is not clear whether this statement was made to Kaplan or some other officer of Opel Inc. (see bottom of page 4 of the affidavit) and it is not clear to the court whether the underlined portion of the Kaplan quote is a surmise on her part or something Cotnoir actually said to her or someone else at Opel Inc. Such confusion is warranted by the fact that the so-called Higgins-Cotnoir "conspiracy" would seem somewhat out of joint if we take Kaplan's affidavit literally, since the Olenicks had apparently arranged to have their furniture moved in without the knowledge or agreement of the Levesques — that's what led to Attorney Cotnoir's call. Suffice it to say that confusing presentations in an affidavit which do not even make clear that CT Page 8216 they have a non-hearsay basis cannot be used as a reason to deny a motion for summary judgment.
The only other possible basis for a conspiracy theory focusing on the number of people involved — after all there has to be more than one — is some kind of allegation that the Levesques conspired with their attorney and the Olenicks conspired with theirs and each conspiracy is actionable separately. Such a theory of action should not be recognized in our state. It would make the practice of the legal profession intolerable and place too heavy a burden on its proper functioning. A heavy price would be placed on vigorous advocacy whenever a plaintiff's or even a defendant's lawyer took a position that the opposing side of a dispute disagreed with. There is nothing to indicate that any of the attorneys involved here had any personal interest in these matters over and apart from their obligation to represent their clients on matters and complaints the clients brought to their attention.
But the conspiracy theory also fails if we turn to what maybe regarded as the substantive elements of a civil conspiracy charge — what criminal or unlawful acts are alleged or what lawful acts were done by criminal or unlawful means. cf Williams v. Maislen
supra.
The Levesques had a dispute with the plaintiff about the effect of a declaration of restrictions and covenants put on the land. It is clear that such a declaration as it related to minimum square footage would be of benefit to them. The plaintiff contested the Levesque rights under this declaration and the parties engaged in negotiation for several months to resolve their dispute. During negotiations the Levesques said they would agree to reduce the square footage requirements in the declaration. This would involve a financial loss to them so in return for such an agreement they made certain demands contained in letters attached to the plaintiff's complaint and referred to in Kaplan's affidavit. The court also accepts the plaintiff's representations that during the course of discussions the Levesques changed their positions and the legal theories they were adopting relative to their rights under the initial declaration. In any event negotiations proved unsuccessful. The plaintiff unilaterally put a "corrected declaration" on the land records relative to minimum square footage; the Levesques put their protest on the land records to preserve their legal position. None of this seems to be contested. CT Page 8217
The Olenicks enter the picture during this ongoing dispute and want to buy a lot from the plaintiff. The court won't belabor the matter by citing obvious authority but under all these just mentioned circumstances the Olenicks had a justifiable concern over the cloud on the title as offered. Slattery v.Maykut, 176 Conn. 147, 161 (1978). The Olenicks should not be expected to buy a possible lawsuit along with the land which might be initiated by the Levesques or their successors in interest.
The Olenick affidavit asserts that when they entered into contract with the plaintiff in December of 1989, the existence of the Levesques alleged co-conspiring was unknown to them. The whole basis of the conspiracy claim attempting to tie Levesque-Cotnoir to Olenick-Higgins would have to be based on some notion that the Olenicks didn't go through with the purchase not because of their fears about the title and further that their lawyer Higgins never had any such fears — rather the claim would have to be made that the Olenicks and Higgins took the position they did as "leverage" — to use a favored word of the plaintiff — to force Opel Inc. to accept the Levesque demands concerning the declaration and its modification. There has not been scintilla of evidence presented by the plaintiff to indicate why the Olenicks would have any such motive or to indicate that this was a basis for their action. The only speculation along these lines that is hinted at in the Kaplan affidavit (see page 6) is that the fact that the lawyers for each of these parties were in the same firm gave them an opportunity to, pursue such a policy. There is absolutely nothing to suggest these attorneys engaged in any such unethical conduct and the facts asserted in various uncontested affidavits indicate the Olenicks had an independent and viable legal basis to reject the title the plaintiff was prepared to offer. Attorney Higgins hired outside counsel to secure an expert opinion that there was a real problem with title because of the documents on the land records, see affidavit of Attorney Denis R. Caron who is an underwriting and title attorney with Connecticut attorneys Title Insurance Company.
The plaintiff has not alleged a sustainable claim of tortious interference with contractual relations and/or business expectancy. cf Blake v. Levy, 191 Conn. 257, 260 (1983). None of the acts alleged meet the test and speculation as to motive is irrelevant and again not based on any asserted improper actions of the defendants. CT Page 8218
Insofar as there is an attempt to bring in Attorney Longo under the theory asserted in this count, frankly it is not worth much comment by the court. The allegation under the conspiracy theory regarding Attorney Longo made in paragraph 18 is difficult to understand as a matter of simple English and nothing in the Kaplan affidavit indicates any personal knowledge by her that Attorney Longo conspired in any way with anyone and his affidavit denying such a claim is uncontroverted. He simply told the prospective purchasers of the preexisting problems and claims between the other defendants and Opel which he had no part in creating or advancing. If an attorney can't give a reason to a prospective client which is undisputed on the facts as to why he or she won't take a case it would fundamentally interfere with a lawyer's right to conduct his practice as a professional which must necessarily include a right to explain his or her actions in an intelligible manner to people who seek the lawyer's services.
As to the second count all the defendant's motions for summary judgment are granted. The action was withdrawn as to the Olenicks but if that matter were before the court the court would have granted their motion for summary judgment.[1]
 Third Count
Count Three merely seems to set forth explicitly a new manner in which the plaintiff claims to have been damaged by the underlying conspiracy set forth in the second count. That is, the refusal of the Olenicks to complete their purchase agreement which the plaintiff alleges was part and parcel of the conspiracy among all the defendants caused the plaintiff damage because they had to sell the property to someone else at a lower price.
As discussed previously the Olenicks committed no unlawful act in refusing to purchase this property so no conspiracy to commit such an act was actionable and no recovery would lie under the law of this state even if co-conspirators could be located. The court grants the defendants' motions for summary judgment and believes the Olenicks would have been entitled to such relief if that matter was before the court.
Fourth Count
The fourth count on the one hand can be viewed as similar to the third count in that it might be viewed as merely setting CT Page 8219 forth another aspect of the conspiratorial activity which forms the theory behind the general conspiracy theory set forth in the second count The affidavit and notice filed by the Levesques on January 16, 1990 stated what was a fact — that the corrected declaration put on the land records by the plaintiff the previous October was done without their knowledge and consent. None of these facts have been contested. The effect of the Levesque filing would be to refer prospective purchasers back to the original declaration put on the land records in December of 1988. The Levesques were protecting rights they claimed in their negotiations with the plaintiff by putting this notice on the land records. The effect of such notice on the records would in fact have the effect of alerting prospective purchasers to a possible cloud on any title they received from the plaintiff and the danger of legal action by the Levesques, cf Armstrong v.Leverone, 105 Conn. 461 (1926-27) Hartford Electric Light Co. v.Levitz, 173 Conn. 15 (1977). But any injury to the business prospects of the plaintiff was only ancillary to the assertion of their claim. Certainly they had a right to maintain the so-called corrected declaration filed by the plaintiff was of no legal force and effect since it was done without their knowledge and/or consent. cf Powell, The Law of Real Property, Vol 5, § 677 at pages 60-118 through 60-122, cf Hening v. Maryland,313 So.2d 379, 382 (Va., 1984). The fact that the actions of individuals might cause damage to someone does not ipso facto form the basis of a claim of civil conspiracy unless those actions were unlawful. cf Jones v. O'Connell at 189 Conn. 660-662, also see Williams v. Maislen, 116 Conn. at page 437. The allegations set forth in this count then add nothing to the conspiracy theory advanced by the plaintiff even if the other problems the court had with that theory could be overcome and which have been expressed previously = i.e. who conspired with whom, when and where?
Insofar as this count alleges a slander of title the court has the just noted basic problems with a conspiracy theory but also with the substantive application of this theory to the undisputed facts of this case. The law on this somewhat rare allegation is succinctly set forth in Connecticut Law of Torts, Wright Ankerman, § 167, p. 447.
The plaintiff does not claim by way of affidavit or otherwise that the contents of the Levesque affidavit and notice on the land records was false, Battistelli v. Corso. 30 Conn. Sup. 135,143 (1993). Malice is also a requirement of this type of action, CT Page 8220Toms v. Setlipane, 30 Conn. Sup. 374, 382 (1973), WildwoodAssociates Ltd v. Esposito, 211 Conn. 36, 49 (1989). In failing to find malice in the Toms case then Judge later Justice Shea said words that are applicable to the situation now before the court.
 "The plaintiff was exercising her legal right to file these documents in order to protect her interests. No inference of malice can be drawn from her conduct such as would be necessary to establish a cause of action for slander of title at common law or under the general § 47-33j", id at page 382.
Finally Wright and Ankerman note that under this theory of action. "Most jurisdictions require that the plaintiff allege and prove special damage before he [sic] is entitled to recovery." That has not been done here.
The court grants the defendants' motions for summary judgment on this count and believes the Olenicks would be entitled to such relief if their motion were now before the court.[2]
Corradino, J.