[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This is an action for breach of contract regarding the construction of a home in Plymouth, Connecticut.
The court makes the following findings of fact by a preponderance of the evidence. On January 8, 1993, Scott Magnano, (hereinafter `plaintiff') purchased property described as Lot 1 on Scott Road in Plymouth, Connecticut.[1] At the time plaintiff purchased the lot, he had already begun discussions with the defendant, Joseph Testa (hereinafter "defendant") regarding defendant building a home for him.
On March 23, 1993, Home Designing Service provided the plaintiff with plans for the construction of a three thousand one hundred square foot raised ranch. These plans provided for a concrete slab foundation as opposed to a full basement. Specifically, the blueprint described a foundation consisting of a four inch concrete slab, a polyvapor barrier, and six inches of compacted fill. The design also depicted nine piers, which in this case were going to be fifty-five gallon drums filled with concrete, installed throughout the foundation.
In order to properly build the slab foundation, the piers must be installed in the foundation and the area must be completely backfilled and compacted. A trench is then dug in the compacted soil and the underground piping is placed in the trench. After all of this work is completed the concrete slab can be poured. Once the slab is poured the foundation is completed and the home is ready for framing. It is not practical or safe to begin framing a home like the one contemplated in this case until the foundation is completed.
On June 7, 1993, the defendant applied for a building permit for the construction of the plaintiffs home.
On June 10, 1993, plaintiff and defendant entered into a contract for construction of the plaintiffs home (hereinafter "contract") as set forth in the March 23, 1993 blueprints.
The contract provided in relevant part, "Expected date to start August 1, 1993." There was no clause in the contract which made time of the essence. The contract also provided that the excavation/survey and the CT Page 12614 foundation would be the responsibility of the plaintiff. Plaintiff contracted with Mancini Brothers to do the foundation work on June 10, 1993.
On July 21, 1993, the town issued a building permit for a slab foundation. On July 24, 1993, the footings were poured and on July 29, 1993, the foundation walls were poured. Contrary to the original plans, the foundation walls had to be six feet deep instead of four feet because of the soil conditions. On July 31, 1993, an as-built survey of the foundation was prepared by the town.
As of August 6, 1993, the foundation was not completed. Mancini Brothers still had to install the piers, and complete the backfill and compaction around the piers before the defendant could install the underground piping.
On August 16, 1993, the building permit was approved.
The parties dispute what was occurring throughout the remainder of August. The defendant claims that he was at the site on several weekends and evenings and that he observed that the site was not ready for him to begin his work. He claims that at some point he told plaintiff that he was not going to be able to do the job because the foundation was still not completed and plaintiff was now talking about putting in a full basement instead of a slab basement. Plaintiff claims that he was continually asking defendant to start doing the job.
The court does not need to decide this factual issue, however, because it is undisputed that the piers were not installed in the foundation until September 2, 1993. Pursuant to the contract, the plaintiff was responsible for completion of this work by August 1, 1993. The court also finds that the plaintiff was not requesting that Mancini Brothers complete the necessary pier work and compaction any earlier than September. In the absence of the piers being put in place and the ground being compacted, the defendant could not begin installing the underground utilities because if the piers are installed before the ground is compacted the pipes will break when the compaction work is done. Additionally, the slab was still not poured which was necessary for completion of the foundation.
Plaintiff testified that he sent certified letters on August 30, 1993 and September 13, 1993 to defendant stating that if work did not start within five days the builder would be in default of the contract. The court does not find the plaintiff credible on this point. These letters were not sent by certified mail because the certifications plaintiff produced for both letters were not stamped by the post office in CT Page 12615 accordance with standard post office policy. The court finds it incredible that the post office failed to follow its standard procedure on two separate occasions. Additionally, defendant testified that he never received these letters. Finally, it does not make sense that plaintiff would have sent such a letter on August 30, 1993, when he was aware that he had still not had the piers installed and the soil compacted by Mancini Brothers.
Plaintiff claims that sometime before ordering new plans for a full basement on September 21, 1993, he made the decision that defendant had defaulted on the contract. This claim does not withstand scrutiny. Plaintiff testified that he made the decision that the defendant was in default on September 18, 1993, which was five days after the September 13, 1993 letter he claims he sent to defendant stating that if he did not start work within five days the defendant would be in default. However, plaintiff informed Mancini Brothers on September 10, 1993, that he wanted the foundation work redone in order to provide for a full basement. Therefore, the court finds that as early as September 10, 1993, which was before plaintiff believed that defendant was in default, plaintiff had made the decision to change the plans so that he could have a full basement instead of a slab foundation.
Plaintiff also testified on direct examination that there were changes to the building as a result of the change in the type of basement, including installation of a full floor system and eight foot high ceilings instead of the nine feet originally contemplated.
Plaintiff received the modified plans for a full basement on September 22, 1993. Mancini Brothers then completed its foundation work on October 5, 1993. Accordingly, on October 5, 1993, the house was finally ready for framing.
On September, 18, 1995, plaintiff received a certificate of occupancy for his completed home.
 DISCUSSION
In construing a contract, the contract must be read as a whole and if possible every term must be given operative effect. O'Brien v. U.S.Fidelity and Guarantee Co., 235 Conn. 837, 843 (1996). When the contract is read as a whole, it is clear that the intent of the parties was that plaintiff was to have the foundation completed by August 1, 1993, 50 that the defendant could commence his obligations under the contract on or about that date.
"Where time for performance is stated in an agreement, a party's tender CT Page 12616 of performance within a reasonable time thereafter will be considered substantial performance unless the parties intend that time for performance be of essence." Mihalyak v. Mihalyak, 11 Conn. App. 610, 616
(1987). Where an agreement does not specifically state that time is of the essence it is presumed not to be unless the parties have expressed a contrary intent. Kakalik v. Bernardo, 184 Conn. 386, 392 (1981). Because no such contrary intent was voiced, plaintiff was under an obligation to complete the foundation within a reasonable time after August 1, 1993 in order that the defendant could begin to fulfill his obligations under the contract.
What constitutes a reasonable time is a question of fact. Robinson v.Commercial Contractors, Inc., 6 Conn. Cir. Ct. 398 (1970). In this case, the delay throughout all of August and into September was unreasonable because all of defendant's jobs, and by inference, his workers, are scheduled for a certain time period to perform a particular function.
If an express "condition [in the contract] is not fulfilled, the right to enforce the contract does not come into existence." Christophersen v.Blount, 216 Conn. 509, 512 (1990). "A condition precedent is a fact or event which the parties intend must exist or take place before there is a right to performance." Id. "Whether the performance of a certain act by a party to a contract is a condition precedent to the duty of the other party to act depends on the intent of the parties as expressed in the contract and read in light of the circumstances surrounding the execution of the instrument." Id.
It is implied "`that the contractor shall be permitted to proceed with his construction in accordance with the contract and that he shall be given possession of the premises to enable him to do so.'" Walter KiddeConstructors, Inc. v. State of Connecticut, 37 Conn. Sup. 50, 60 (1981). Plaintiff had an obligation under the contract to complete the foundation within a reasonable time after August 1, 1993, and therefore deliver possession of the premises in a manner in which defendant could begin his work under the contract. He failed to fulfill this obligation. The piers were not installed for a full month after August 1, 1993, and the defendant could not have begun his work installing underground piping until the piers and compacting were completed.
A delay caused by an owner may constitute a breach excusing performance. Hartford Electric Applicators of Thermalux v. Alden,169 Conn. 177, 183 (1975). In this case, plaintiffs failure to have the piers installed and the ground compacted so that defendant could begin his work constituted a breach of the plaintiffs obligation.
"One cannot recover upon a contract unless he has fully performed his CT Page 12617 own obligation under it, has tendered performance or has some legal excuse for not performing." Automobile Insurance Co. v. Model FamilyLaundries, Inc. 133 Conn. 433, 436 (1947). Since the plaintiff had not performed his obligations under the contract within a reasonable time, he cannot enforce the contract against the defendant.[2]
Moreover, even if the plaintiff still had the right to enforce the contract as of September, he then abandoned the contract by deciding as early as September 10, 1993, to change the basement from a slab basement to a full basement. Mutual assent to abandon a contract can be inferred from the attendant circumstances and conduct of the parties. Jazlowieckiv. Nicoletti, 34 Conn. Sup. 670, 672 (1977); Battistelli v. Corso,30 Conn. Sup. 135, 143 (1973). The plaintiff made a change in the type of basement which was inconsistent with the contract entered into between the plaintiff and defendant and which resulted in further changes to how the home was ultimately built. Accordingly, even if the defendant was still bound by the contract as of September, the plaintiff, by his conduct, then abandoned the contract when he changed the plans to a full basement. Under such circumstances, the defendant was justified in considering the contract rescinded.
For all the foregoing reasons, judgement will enter in favor of the defendant.
 CHASE T. ROGERS SUPERIOR COURT JUDGE