KECKO PIPING COMPANY, INC. *v.* TOWN OF MONROE
ET AL.

HOUSE, C. J., LOISELLE, BOGDANSKI, LONGO and BARBER, Js.

Argued November 4, 1976—decision released January 4, 1977

*Raphael Korff,* for the appellant (plaintiff).

*Arthur D. Friedman,* for the appellee (named defendant).

*David S. Maclay,* with whom were *James E. Rice* and, on the brief, *G. Whitney Biggs,* for the appellee (defendant Fletcher-Thompson, Inc.).

HOUSE, C. J. This is an appeal from a Superior Court judgment in favor of the defendants in an action for damages based on a claim by the plaintiff that the defendants wrongfully interfered with the making of a contract between the plaintiff as a subcontractor and a general contractor.

The facts of the case are not in dispute. In 1969, the defendant town of Monroe, hereinafter referred to as the town, advertised for bids for the remodeling and renovation of a school building. The renovation was to be done in part during the summer recess and to continue during the fall while school was in regular session. This would require shifting classes among schoolrooms to accommodate the work. The renovation was to cost approximately $600,000 and was considered difficult work because of the schedule, the occupancy of the building and the nature of the work. Coordination, promptness, and competence in the work to be performed by the subcontractors were proper considerations for the town.

The defendant, Fletcher-Thompson, Inc., hereinafter referred to as the architect, was retained by the town as the architect and engineer for this renovation. A duty of the architect under its agreement with the town was to assist the town "in obtaining bids or negotiated proposals and in awarding and preparing construction contracts."

The town distributed bid invitations on the standard forms of the American Institute of Architects containing general and special conditions which the successful bidder was required to execute, which were known to the plaintiff subcontractor, Kecko Piping Co., Inc., and to the contractor, Miko Brothers, Inc. The section of the general conditions pertaining to subcontractors provided that (a) the apparent successful bidder was to furnish the architect with a list of subcontractors it would use on the work; and (b) prior to the award of the contract, the town or the architect would notify the apparent successful bidder of those subcontractors

that were unacceptable, and, in that event, the bidder would have the right to withdraw its bid; the contractor was not allowed to contract with subcontractors other than those named, without the permission of the town and the architect. The bid invitation contained a clause that the town "reserves the right to reject any and all proposals, to waive any informalities, or to accept the proposal that, in its judgment, will be for the best interests of the [town]."

Miko Brothers, Inc., hereinafter referred to as the contractor, was the low bidder at $623,000. Its bid included the proposal that the plaintiff be a subcontractor for the mechanical work which amounted to $102,000. On May 1, 1969, two days after submission of bids, the architect wrote to the plaintiff stating that it had been named a subcontractor by the contractor and requested that the plaintiff furnish certain information on a form in order for the architect to determine the plaintiff's qualifications to perform the work called for by the proposed subcontract. There was no response to the letter nor did the plaintiff ever complete the form or the contractor obtain the necessary information from the plaintiff despite the urging of the architect.

At the time in question, the plaintiff had a staff of two or three, including Frank Kecko, and its office consisted of a telephone answering service. The largest single job that had been completed by the plaintiff in recent years had been about $80,000 but the plaintiff, at the time of bidding in the present case, had a $255,000 contract to perform work on the Stratford police station. It planned to subcontract to others approximately 40 percent of the mechanical work on the defendant's school project.

In view of these facts, including the architect's inability to obtain the requested information from the plaintiff, the architect and the town became concerned over the plaintiff's ability to perform as a subcontractor. The contractor also expressed concern that the plaintiff might have overextended itself with other work. The architect advised the town that it would be in its best interests if the plaintiff were not the mechanical subcontractor on this particular job and they met with the contractor to explain their position. The contractor did not object to the substitution of another subcontractor for the plaintiff but asked for a letter from the town stating its position concerning the plaintiff. Such a letter was furnished as requested stating the reasons for not accepting the plaintiff and confirming that the contractor and architect had agreed to the substitution of another subcontractor to do the mechanical work at no extra cost. The town entered into a contract with the contractor on June 9, 1969. The contract listed the substituted firm as the mechanical subcontractor.

None of these findings of fact by the court is contested by the plaintiff. Nor does it contest the conclusion of the court that the reliance of the town upon the advice of the architect was reasonable under the circumstances. It does, however, assign error to the conclusions of the court that the plaintiff failed to prove the necessary tortious conduct on the part of either defendant, that there was no fraud, no misrepresentation, no intimidation and no molestation, that the plaintiff failed to prove that the interference on the part of the defendants was malicious, that the architect acted under a qualified privilege and was under an obligation to advise the town as to the suitability of contractors and

subcontractors for the renovation, and that the architect did not exceed the limits of its qualified privilege. Conversely, the plaintiff asserts that the court erred in not reaching a conclusion that there was coercion on the general contractor not to employ the plaintiff as a subcontractor and in not finding and concluding that there was tortious interference with the plaintiff's contract expectancy.

We find no merit whatsoever to these assignments of error. "The trial court's conclusions are tested by the finding. *Brauer* v. *Freccia,* 159 Conn. 289, 293, 268 A.2d 645. The conclusions reached by the trial court must stand unless they are legally or logically inconsistent with the facts found or unless they involve the application of some erroneous rule of law material to the case. *Johnston Jewels, Ltd.* v. *Leonard,* 156 Conn. 75, 79, 239 A.2d 500; *Craig* v. *Dunleavy,* 154 Conn. 100, 105, 221 A.2d 855." *Klein* v. *Chatfield,* 166 Conn. 76, 80, 347 A.2d 58. The facts found by the court amply support its conclusions and it does not appear that the court applied any erroneous rule of law material to the case.

The court's memorandum of decision clearly discloses that it properly applied the law to the facts which it found. It noted that this state has long recognized that a cause of action exists for the tortious interference with a business expectancy; *Bulkley* v. *Storer,* 2 Day 531; but that for a plaintiff successfully to prosecute such an action it must prove that the defendant's conduct was in fact tortious. This element may be satisfied by proof that the defendant was guilty of fraud, misrepresentation, intimidation or molestation; *Busker* v. *United Illuminating Co.,* 156 Conn. 456, 461, 242 A.2d 708; *Skene* v. *Carayanis,* 103 Conn. 708, 715, 131 A. 497;

or that the defendant acted maliciously. *Goldman v. Feinberg,* 130 Conn. 671, 675, 37 A.2d 355. The court expressly concluded that the plaintiff had failed to prove the tortious conduct on the part of either defendant which was a necessary basis for the successful prosecution of this action and its finding of fact fully supports this conclusion.

Pursuant to its contract with the town, the architect was under an obligation to advise the town as to the suitability of contractors and subcontractors and accordingly enjoyed a qualified privilege as noted in Restatement of Torts, § 772: "One is privileged purposely to cause another not to perform a contract, or enter into or continue a business relation, with a third person by giving honest advice to the other within the scope of a request made by him." There was clearly no error in the court's conclusion that the defendant architect in this case did not exceed the limits of its qualified privilege and the plaintiff has not attacked the further conclusion of the court that the reliance of the town upon the advice of the architect was reasonable under the circumstances.

There is no error.

In this opinion the other judges concurred.