[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff, Anthony J. Francoline, brought: this action in a three-count complaint against the defendants Linda Klatt and George R. Recck.
In the first count he claims a breach of a contract to sell real estate. His second count charges that the defendant Klatt accepted the referenced contract by her silence. His third count claims unfair trade or business practices on the part of the defendant Klatt in violation of Conn. Gen. Stats.42-110b.
To these charges the defendant Klatt counterclaimed in five counts against the plaintiff's claims. In her first count she seeks a declaratory judgment that no contract exists to sell and purchase real estate between her and the plaintiff and seeks a release of a bond for deed and a lis pendens filed on the land records in the Town of Avon. Her second count alleges unfair trade practices on the part of the plaintiff in violation of Conn. Gen. Stats. 42-110d et seq. Her third count alleges that the plaintiff has committed forgery third degree in violation of Conn. Gen. Stats. 53a-139. Her fourth count alleges a tortious interference with the defendant Klatt's contract to sell the referenced real estate to the defendant Recck. Her fifth count seeks double damages because of the felony changing of a document in violation of CT Page 9181 Conn. Gen. Stats. 52-565.
The defendant Recck has cross-complained against the plaintiff claiming tortious interference with his interest to buy the referenced real estate and seeks double damages as per Conn. Gen. Stats. 52-565.
The defendant Klatt also cross-complains against the defendant Recck in three counts. In count one she seeks a declaratory judgment that no contract now-exists between the two defendants to transfer the referenced real estate between them. Her second count alleges a breach of the contract to purchase real estate. Her third count alleges unfair trade practices in violation of Conn. Gen. Stats. 42-110g on the part of the defendant Recck and demands punitive damages and attorney's fees as. per Conn. Gen. Stats. 42-110g. To this. the defendant Klatt filed a special defense that she was unable to convey good and marketable title within 60 days of the scheduled closing, thus terminating their agreement.
Thus, there are a total of twelve counts and one special defense in this action.
 A.
Facts Found
The defendant is the owner of a parcel of commercially-zoned land in the Town of Avon upon which stands an old house which was being used for offices and an outbuilding, a garage, which was and is rented to the plaintiff. It is known as 37 West Main Street.
The plaintiff is the owner of the property which adjoins the defendant Klatt's property to the west and south. The defendant Recck is the owner of the adjacent real estate to the east of the defendant Klatt's land. All three properties front on West Main Street.
The defendant Klatt purchased 37 West Main Street in 1982. She is an attorney admitted to practice in this state and conducted her law practice from that location until 1986 when she moved to South Carolina where she now resides and is employed as the manager of the Island Club at Hilton Head, South Carolina. Both the plaintiff and the defendant Recck are in the business of developing real estate. The defendant Klatt has been renting an outbuilding, a garage, at 37 West Main Street for the last five to six years to the plaintiff. Some time in the early 80's in either 1983 or 1984, the plaintiff approached the defendant Klatt and indicated that he was interested in purchasing her CT Page 9182 3 property or entering into a joint venture in developing it. Nothing came from these discussions.
In September, 1988 the plaintiff contacted defendant Klatt to see if she was interested in selling 37 West Main Street to him. After a number of phone calls they orally agreed on a price of $400,000.00.
By letter dated October 18, 1988 (Plaintiff's Exhibit I) the plaintiff sent his version of the parties' phone agreement and requested that she sign the letter. The defendant Klatt made two changes to the proposal and initialed both changes. The first change was that the "Buyer to pay Connecticut Transfer Taxes." The second change was that October was substituted for November as the time of the expiration of the leases of the buildings on the premises. The defendant Klatt signed the letter as she had changed it and returned it to the plaintiff with an undated cover letter which was received by the plaintiff on November 3, 1988 and who took no further action on the letter itself.
Exhibit I was by its terms subject to "a mutually agreeable Bond for Deed." "Ten percent [of the purchase price of $400,000, i.e., $40,000, was payable] at the signing of a mutually agreeable Bond for Deed by November 11, 1989."
The plaintiff started discussing the development of the referenced property with a Roy M. Beebe, M.D. who was a tenant of the plaintiff who needed more space than the plaintiff had at his property to the west of subject property.
On January 7, 1989 the plaintiff's attorneys sent the defendant Klatt an unsigned "Purchase and Sales" agreement (Plaintiff's Exhibit M): for her review, enclosed with a cover letter. Shortly thereafter the plaintiff phoned the defendant. She had not received his mailing. They explored the possibility of a tax-free exchange of realty at no cost to the plaintiff.
On January 25, 1989 the defendant Klatt returned the "Purchase Agreement" which the defendant Klatt had amended in four respects. First, she deleted a clause from the second sentence of paragraph 7 on page 2 entitled Survey. Second, she added a sentence to paragraph 13 (iii) on page 6 making the purchaser liable for transfer taxes and fees. Third, on page 7 she removed paragraph 21 entitled "Purchaser's Default" and inserted a new-paragraph 21. Lastly, on page 8 she added a new paragraph 27 "Tax Free Exchange." In addition she completed Exhibit C "Rent Roll" and D "Tenant Collateral Agreements" — as requested by the CT Page 9183 plaintiff's attorney in his January 7, 1989 letter (attachment 3). She signed the changed bond for deed, had her signature witnessed and notarized, and sent the changed bond for deed to the plaintiff with a cover letter dated January 25, 1989 which was received by the plaintiff on January 30, 1989. Defendant's Exhibit 5 is an unexecuted copy of the amended bond for deed. The defendant Klatt's January 25, 1989 letter is defendant's Exhibit N.
The parties spoke on the phone within a few days and discussed the changes that the defendant Klatt had made, as well as a sewer lien which was not mentioned in the bond for deed and the tax-free exchange in which the plaintiff would purchase some property in South Carolina and swap it for the subject premises.
On February 8, 1989 the plaintiff sent the defendant Klatt the following letter "Re Sale of 37 West Main Street.
Dear Linda:
We [sic] are returning two executed copies of the Purchase and Sales Agreement with the changes initialed. Please initial additional changes on pages 7a and 8 and return a copy to us.
Enclosed is a copy of the signature page.
If you have any questions, please call.
Very truly yours" (Plaintiff's Exhibit Q)
The enclosure, plaintiff's Exhibit S, was a "Purchase and Sales Agreement" signed by the plaintiff and witnessed and notarized on February 8, 1989. Pages 1, 3, 4, and 5 of the February 8th "Agreement" are the same as the January 25th agreement (plaintiff's Exhibit Q). On page 2 and page 6 of the February 8th "Agreement" the plaintiff initialed the change that the defendant Klatt had made in paragraph 7 and paragraph 13 (iii). On page 7 the plaintiff crossed out the new paragraph 21 entitled "Purchase Default" which had been made by the defendant Klatt and added in a new page 7 in which he inserted the original paragraph 21 as it was first sent to the defendant Klatt (see Exhibit M). On page 8, paragraph 27, the plaintiff added a clause to the tax-free exchange agreement holding the plaintiff harmless from legal and accounting advice re the tax-free exchange.
Also included was a photocopy of the signatures of both parties on an amended page 8 of the agreement. (Plaintiff's Exhibit R). CT Page 9184
The defendant Klatt never initialed the changes, never signed the document as changed by the plaintiff and did not return this document to the plaintiff.
In late February 1989 the plaintiff called the defendant Klatt but was unable to speak to her. He left a message for her to call him. On February 27, 1989 the defendant Klatt returned the plaintiff's call. He was not there. She left a message for the plaintiff that she did not agree with his changes to the agreement and for him to call her.
The plaintiff and defendant Klatt did not talk further until the middle of March, which was after the plaintiff discovered that the defendant Klatt was selling the real estate to the defendant Recck and not to him.
In mid-February 1989 the defendant Recck telephoned the defendant Klatt relative to the sale of the realty in question. He had a bond for deed to purchase the realty to the east of the subject property which he purchased shortly thereafter. Defendant Klatt told the defendant Recck that the property was for sale at $425,000.00. Recck told Klatt he would get back to her. He had an engineer do a sketch, called Klatt, accepted her figure and called his attorney to draft a Bond for Deed which signed before a notary, his attorney and witnesses. This document was then sent to Klatt on February 15, 1989 (Plaintiff's Exhibit AA). This bond for deed called for a closing on or before April 15, 1989. The two defendants executed a "Purchase and Sale Agreement" dated March 1, 1989 and signed by the defendant Klatt on March 1, 1989 and by the defendant Recck on March 2, 1989 (Plaintiff's Exhibit 2). That agreement in Paragraph 9 provided that the closing would take place on April 15, 1989 and that "[t]ime is of the essence in the performance of the provisions of this Agreement." The agreement further provided in Paragraph 5e that:
 If, upon the date of closing, Seller shall be unable to convey to Buyer good and marketable title to the Property subject only to the encumbrances or exceptions to title stated in this agreement, Seller shall have a further period of sixty (60) days to clear any defect and convey such good and marketable title. If, following such period, Seller is unable to convey good and marketable title as required alive, Buyer may elect either to accept such title as Seller can convey upon payment of the purchase price stated herein or to refuse to accept conveyance of the Property. Upon such refusal, all sums paid on account thereof CT Page 9185 shall be paid to Buyer without interest thereon. Upon such payment, this agreement shall terminate and all further claims and obligations arising between the parties hereto by reason of this agreement shall thereupon be released and discharged. No matter shall be construed as an encumbrance or defect in title if such a matter is not construed as an encumbrance or defect under the standards of the Connecticut Bar Association.
No closing was or has been held.
Though the plaintiff had been told by his attorney to get the defendant Klatt's signature on the plaintiff's changes to the agreement, and then plaintiff had sent the agreement to the defendant Klatt for her signature, nevertheless the plaintiff signed the agreement which he had changed on the same pages as the defendant Klatt had earlier signed, before the plaintiff had changed the terms. On the same date he mailed the agreement to the defendant Klatt for her signature. In other words, the agreement now bearing the defendant Klatt's signature had been changed after she signed it.
On March 16, 1989 the plaintiff learned from the defendant Klatt's tenant in the building on the subject premises that the defendant Klatt had an agreement to sell the realty to the defendant Recck.
On March 21, 1989: the plaintiff recorded on the Town of Avon Land Records, Volume 219, pp. 996-1013 an instrument. (Defendant Klatt's Exhibit 3, of which Plaintiff's Exhibit 3 is a copy). Exhibit 3 is the purported Purchase and Sale Agreement which was sent by the plaintiff to the defendant Klatt on January 7, 1989, which was changed by the defendant Klatt and signed by her on January 25, 1989 and sent back to the plaintiff and then changed by the plaintiff — all as previously set forth within memorandum of decision. The plaintiff signed the document and had his signature witnessed and this document notarized under date of February 8, 1989. This document is thus the same as the proposed Purchase and Sale Agreement which the plaintiff had sent the defendant Klatt except that it contained on page 8, the signature page, the defendant Klatt's signature.
The defendant Klatt demanded that the plaintiff remove the "agreement" from the land records. This the plaintiff refused and still refuses to do.
B — Breach of Contract CT Page 9186
The plaintiff claims that he had a valid agreement to purchase real estate from the defendant Klatt in that the defendant Klatt breached that agreement by not going forward with the closing. The plaintiff claims the agreement was the one — the bond for deed — signed by him on February 8, 1989 (defendant Klatt's Exhibit 3 of which plaintiff's Exhibit 3 is a photocopy). He took the proposed bond for deed which he had sent to the defendant Klatt for her approval, which the defendant Klatt had changed, signed, had witnessed and returned to him for his approval and signature and changed the agreement in the manner listed above and signed same. He claims that he had the defendant Klatt's permission to make the changes. This the defendant Klatt denied. The court finds that the defendant Klatt never agreed to allow the plaintiff to amend the agreement. A contract requires that there be an agreement — a meeting of the minds. This court finds that there never was a meeting of the minds on the part of the parties. Therefore, no contract existed between the plaintiff and the defendant Klatt to buy or sell the real estate. She did not accept the offer but inserted some changes and signed the bond for deed — a counter offer. Plaintiff changed the defendant Klatt's counter offer by inserting some changes — another counter offer which defendant Klatt never accepted. No written agreement to buy or sell the real estate ever existed between the plaintiff and the defendant Klatt. The plaintiff, on February 8, 1989, sent the defendant Klatt two copies of the agreement as changed and signed by him, his covering letter, Exhibit Q, requesting the defendant Klatt to initial the changes that he had made and return a copy to him. She never did. The plaintiff was expecting affirmation from to defendant Klatt that they had an agreement. He never got it.
The plaintiff changed the document which the defendant Klatt had signed. He sent the amended document back to the defendant for her signature. Nevertheless, he signed the signature page of the document that the defendant had signed and that he had changed. Our Supreme Court has held: "a contract is not made so long as, in the contemplation of the parties, something remains to be done to establish the contractual relation." New Haven Tile Floor Covering Co. v. Roman, 137 Conn. 462, 464, 78 A.2d 336 (1951); Klein v. Chatfield, 166 Conn. 76, 80 (1974). In this case the parties had agreed in their original correspondence (Plaintiff's Exhibit I). dated October 18, 1988 that their assignments were subject to a mutually acceptable bond for deed. They never agreed to the terms for that bond for deed. Until the execution and delivery of the final agreed-upon bond for deed, a contract to buy and sell real estate does not CT Page 9187 exist. See Sacony-Vacuum Oil Co. v. Elion, 126 Conn. 310., 317 (1940). The bond for deed as first sent by the plaintiff to the defendant Klatt was an offer.
"`The defendants also argue that their February 8, 1989 bond for deed fails to meet the requirements of the statute of frauds. Section 52-550 provides that any agreement for the sale of real property or any interest in or concerning real property must be in writing and signed by the party to be charged. The statute requires that the written memorandum `stat[e] the contract with such certainty that its essentials can be known from the memorandum itself, without the aid of parol proof — and these essentials must at least consist of the subject of the sale, the terms of it and the parties to it, so as to furnish evidence of a complete agreement.'" Lynch v. Davis, 181 Conn. 434, 435, 438 A.2d 977 (1980) quoting Montanaro v. Pendolfini, 148 Conn. 153, 157, 168 A.2d 550
(1961). "The memorandum may consist of several related writings which when taken together describe the essential terms of the contract. Heyman v. CBS, Inc., 178 Conn. 215,221, 423 A.2d 887 (1979)," Old Quarry Association v. Hickey,659 F. Sup. 1064, 1070 (U.S. DC Conn., Burns, J. 1986).
The plaintiff attempts to avoid this statute of frauds by stating that he was authorized to change the bond for deed after the defendant Klatt had signed it and that authorization was oral. This court finds no such authorization.
The plaintiff further argues that the defendant Klatt by not executing and delivering the proposed bond for deed which he sent her on February 8, 1989 had accepted it by her silence. There is no authority for such a claim. The statute of frauds was passed to prevent just such an occurrence. In addition, acceptance of a contract must be manifested by the delivery of the accepted document to the other party to the agreement. As stated earlier, in his letter of February 8, 1989, the plaintiff asked her to return an executed agreement with all changes initialed. She did not. He expected to receive a written agreement back from the defendant Klatt with her initials on each of his changes. He never received it. By not initialing the changed document, there is nothing "signed by the party to be changed" as mandated by Sec. 52-550.
There is a second breach of contract claim in this action. The defendant Klatt alleges that the defendant Recck breached their contract to buy and sell property, by not going through with the purchase. Their contract of sale (Plaintiff's Exhibit z) in paragraph 5.a gives the defendant 60 days after the date set for a closing to clear the title. CT Page 9188 The buyer had the right to reject the incurred property, which he did. The contract to sell the premises between the defendants became a nullity on that subsequent date. It is noted that under paragraph 9 of the defendants' agreement, the closing was scheduled for April 15, 1989 and time was of the essence.
The plaintiff in his post-trial brief cites O'Sullivan v. Bergenty, 214 Conn. 641 (1990) for the proposition that "[a]n agreement need not spell out all the details of the bargain in order to be enforceable. Even if the parties have left some terms of the agreement indefinite, a court may enforce the agreement — if those terms are not material to the bargain." Id. 651-652. This case does not help the plaintiff. O'Sullivan concerned a contract which the court found the conduct of the defendant Bergenty kept the plaintiff from establishing a closing date. The courts employed the doctrine of equitable estoppel on the defendant. Here there is no contract and the plaintiff has not alleged nor proven that he is entitled to the use of this doctrine. See Id. 648. "[I]t is the burden of the person claiming the estoppel to show that he exercised due diligence to ascertain the truth and that he not only lacked knowledge of the true state of things, but had no convenient means of acquiring that knowledge." (Citations omitted), Id. p. 650.
C. CUTPA
All the parties make a charge of unfair trade practices. The plaintiff complains against the defendant Klatt. The defendant Klatt complains against the plaintiff and the defendant Recck complains against the defendant Klatt. The several claims are that the claims against party's conduct constituted a violation of the Connecticut Unfair Trade Practices Act (CUTPA), Conn. Gen. Stats. Sec. 42-110b et seq. "`CUTPA provides a remedy for a `person who suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment of a method, act or practice prohibited by section 42-1106 . . .' Conn. Gen. Stats. 42-110g (a). Section 42-110b proscribes `unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."' Old Quarry Assn. v. Hickey, supra, p. 1073.
In determining whether a practice is "unfair" within the meaning of CUTPA, it is necessary to consider
 (1) [W]hether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established CT Page 9189 by statutes, the common law, or otherwise whether, in other words, it is within at least the penumbra of some common law, statute, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers [(competitors or other businessmen)]. McLaughlin Ford, Inc. v. Ford Motor Co., 192 Conn. 558, 568, 473 A.2d 1185
(1984) quoting Conaway v. Prestia, 191 Conn. 484, 492-93, 464 A.2d 847 (1983); Old Quarry Comm. v. Hickey, Id. 1073-74.
The claim of a violation of CUTPA by a single sale of real estate has been held good against a motion to strike. Geltman v. Ciardiello et al, 3 C.3.CR. 75, 76, 14 CLT 5 pp. 75, 76 (Superior Court, Reynolds, J. 1988).
With respect to the plaintiff's argument that the defendant Klatt engaged in unfair and deceptive acts in the conduct of her trade and business by entering into a contract to sell the defendant Recck, this court concluded in Part B that no contract existed between the plaintiff and the defendant Klatt for the sale of property. Therefore, the conduct of the defendants was not a violation of the CUTPA.
The claim by the defendant Klatt against the plaintiff that he recorded on the Avon land records, Exhibit defendant Klatt 3 and plaintiff P, the agreement changed by the plaintiff after the defendant Klatt had signed same, and the refusal to execute a release of that document, the recording of the lis pendens and this action is a different matter. The plaintiff thought and had concluded, after discussing the matter with his attorney, that he had an agreement with the defendant Klatt to buy the property. Under the circumstances, this court does not believe that the plaintiff's conduct offends public policy or is immoral or unscrupulous. Therefore, the defendant Klatt's CUTPA claim against the plaintiff fails.
D. Tortious Interference with a contract
Both defendants have alleged that the plaintiff's conduct as hereinbefore set forth constituted a tortious. interference with their contract to sell or buy the premises. This court is not satisfied that the plaintiff's conduct has met the test for tortious interference as held by our Supreme Court. "`While our cases have not focused with particularity on that acts of interference are tortious, we have made it clear that not every act that disturbs a contract or business expectancy is actionable. Jones v. CT Page 9190 O'Connell, 189. Conn. 648, 660-61, 458 A.2d 355 (1983).' [F]or a plaintiff successfully to prosecute such an action it must prove that the defendant's conduct was in fact tortious. This element may be satisfied by proof that the defendant was guilty of fraud, misrepresentation, intimidation or molestation — or that the defendant acted maliciously. [Citations omitted]. Kecko Piping Co. v. Monroe, [172 Conn. 197], 201-202, [374 A.2d 179 (1977)]."' Blake v. Levy,191 Conn. 257, 260-61 (1983). 4. Restatement (Second), Torts (1979), which is fraud, Id. 261, holds that the interference must be intentional. This court does not so find.
 E. Other Claims by the Defendant Klatt against the Plaintiff
The defendant Klatt in Count 3 of her amended contract claims a violation of Conn. Gen. Stats. 53c-139. Forgery 3rd Degree, by the plaintiff for his changing the agreement. This court finds that the plaintiff lacked the requisite intent needed to violate that statute for reasons which are already set out in this memorandum. Further, the defendant claims, in Count 5 of her complaint, double damages against the plaintiff for falsely changing a document. The court rules, for reasons set out earlier in this memorandum, that the defendant has failed to prove her case on that issue.
SUMMARY
Amended complaint vs. Defendants Klatt and Recck.
 1st Count: Breach of contract to sell real estate — judgment for defendants.
 2nd Count: Acceptance of contract vs. Defendant Klatt -judgment for Defendant Klatt.
 3rd Count: CUTPA vs. Defendant Klatt — judgment for Defendant Klatt.
Second amended counterclaim — Defendant Klatt vs. plaintiff.
 1st Count: Declaratory judgment — no contest judgment for Defendant Klatt.
2nd Count: CUTPA — judgment for plaintiff.
3rd Count: Tort/Forgery — judgment for plaintiff. CT Page 9191
 4th Count: Intentional interference with contract judgment for plaintiff.
 5th Count: Double damages for forgery judgment for plaintiff.
Cross-complaint Defendant Recck vs. plaintiff.
CUTPA — judgment for plaintiff
Cross-complaint Defendant Klatt vs. Defendant Recck.
 Count 1: Declaratory judgment — no further contest judgment for Defendant Klatt.
 Count 2: Breach of contract judgment for Defendant Recck.
Count 3: CUTPA — judgment for Defendant Recck.
Cross-complaint Defendant Recck vs. Defendant Klatt.
Breach of contract -judgment for Defendant Recck.
Special Defense — Defendant Klatt vs. Defendant Recck — judgment for Defendant Klatt.
Joseph B. Clark, J.