[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON DEFENDANT'S MOTION TO STRIKE (#103)
This memorandum of decision addresses the motion to strike submitted by the defendant, First Union National Bank (First Union) under date of May 15, 2000 (#103). Through this motion and the accompanying Memorandum of Law, First Union asserts that each of the six counts of the plaintiff's amended complaint, dated April 24, 2000 (#102), fails to state a claim for which relief may be granted, and that the entire complaint is insufficient as a matter of law. First Union's fundamental assertion is that in each count of the complaint, the plaintiff has relied upon an allegedly unlawful or improper use of the "virgule", a typographical mark popularly known as a "slash" ("I"), which was used to separate the named payees upon checks which the plaintiff claims was drawn in its honor. The plaintiff Highland Tank Manufacturing (Highland) vigorously contests First Union's arguments, arguing that its allegations satisfy the legal requirements for pleading each cause of action set forth in the complaint. This motion and the plaintiff's response thereby raise an issue which is apparently novel to Connecticut law.[1] The court finds the matter in favor of the defendant First Union.
The file reflects that Highland filed its amended complaint in six counts, seeking relief for First Union National Bank's alleged improper payment of several checks which ostensibly should have provided benefit to CT Page 13211 the plaintiff Specifically, Highland has alleged the following on the part of First Union: in the First Count, a violation of Article 3 of the Uniform Commercial Code, General Statutes § 42a-3-101 et seq. (UCC); in the Second Count, tortious interference with a contract; in the Third Count, negligence; in the Fourth Count conversion; in the Fifth Count civil conspiracy; and in the Sixth Count, a violation of Connecticut Unfair Trade Practices Act, General Statutes § 42-110a et seq. First Union's motion to strike asserts that each count fails to state a claim upon which relief may be granted because First Union's conduct was proper and permissible under Article 3 of the Uniform Commercial Code.
Highland's amended complaint sets forth specific facts in support of its allegations against First Union. Each of the six counts is based upon Highland's assertion that between June 19, 1998 and September 16, 1998, an entity known as Bartis Equipment presented for payment to First Union several checks made payable to the order of "Bartis Equipment/Highland Tank." The checks were drawn on an account in the name of Tankworks Removal Replacement, LLC (Tankworks), maintained at The Savings Bank of Manchester. Highland further alleged that the proceeds of these checks, which totaled $57,785.00, were deposited by First Union into Bartis Equipment's account without the knowledge and authority of Highland.[2]
As to the First Count, the plaintiff has specifically alleged that the improperly paid checks required the endorsement of both Bartis Equipment and Highland Tank, pursuant to General Statutes § 42a-3-110 (d) (UCC). In the Second Count, Highland alleged that First Union knew that Tankworks and Bartis Equipment maintained an agreement relating to the issuance and endorsement of "joint checks", which it knew was intended to benefit the plaintiff by depriving Bartis Equipment of sole access to check proceeds, and that First Union dishonored this agreement. The Third Count also alleges that First Union negligently failed to honor this agreement, and maintains that the bank thereby breached its duty of care to Highland, depriving the plaintiff of the proceeds at issue. In the Fourth Count, Highland claims that in refusing to pay it the monies due from these checks, the defendant allowed the conversion of its funds to the benefit of Bartis Equipment. As to the Fifth Count, the plaintiff alleges that First Union conspired with Bartis Equipment to accept the checks at issue and to deposit them into Bartis Equipment's account with its sole endorsement and in the absence of the plaintiff's signature. The Sixth Count sets forth the plaintiff's CUTPA claim, incorporating as a factual basis the fundamental allegations of the five prior counts.
It is axiomatic that "[t]he purpose of a motion to strike is to contest . . . the legal sufficiency of the allegations of any [complaint] . . . to state a claim upon which relief can be granted." (Internal quotation marks omitted.) Peter-Michael, Inc. v. Sea Shell Associates, 244 Conn. 269,270, 709 A.2d 558 (1998). While "[a] motion to strike admits all facts CT Page 13212 well pleaded; it does not admit legal conclusions or the truth or accuracy of opinions stated in the pleadings." (Emphasis omitted; internal quotation marks omitted.) Faulkner v. United TechnologiesCorp., 240 Conn. 576, 588, 693 A.2d 293 (1997). "The court must construe the facts in the complaint most favorably to the plaintiff" (Internal quotation marks omitted.) Id., 580. The plaintiff is not required to expressly allege facts if they are necessarily implied. See Pamela B. v.Ment, 244 Conn. 296, 308, 709 A.2d 1089 (1998). The court has observed and applied the foregoing rules of law in considering the defendant's motion to strike the entirety of the plaintiff's complaint in this matter.
 I. UNIFORM COMMERCIAL CODE ARTICLE 3
The defendant argues that General Statutes § 42a-3-110 (d) permits payment of checks in the alternative when the check is made payable to multiple parties separated by a virgule or slash and that, therefore, there is no legal basis for the claims brought by the plaintiff in the First Count. Highland counters that the popular and predominant use of the virgule requires payment of the checks to the payees not in the alternative but jointly, thus requiring endorsements of both payees. Specifically, Highland argues that "the virgule is used to designate a fraction such as 3/4ths, or the date such as 2/21/92, a title such as M/M, meaning Mr. Mrs. or d/b/a, meaning doing business as or n/k/a, meaning now known as. . . . [and that] [t]he slash joins those initials to give them meaning and is not a substitute for the word `or.'" (Emphasis in original.) Plaintiff's Objection to Motion to Strike (#105), p. 4. Thus, in this instance, the plaintiff submits that the checks written to "Bartis Equipment/Highland Tank" were required to be paid toboth Bartis Equipment and Highland Tank, and that First Union was required to obtain the endorsing signatures of both parties before honoring the Tankworks check. First Union maintains, on the other hand, that the checks, as drafted, were lawfully payable to one party or the other, to the exclusion of either Bartis Equipment or Highland Tank. The court finds this issue in favor of the defendant.
The language of General Statutes § 42a-3-110 (d) contemplates the circumstances created by the drafter of the check at issue, listing "Bartis Equipment/Highland Tank" in the payee portion of the instrument. General Statutes § 42a-3-110 (d) provides: "If an instrument is payable to two or more persons alternatively, it is payable to any of them and may be negotiated, discharged, or enforced by any or all of them in possession of the instrument. If an instrument is payable to two or more persons not alternatively, it is payable to all of them and may be negotiated, discharged, or enforced only by all of them. If an instrument payable to two or more persons is ambiguous as to whether it is payable to CT Page 13213 the persons alternatively, the instrument is payable to the persons alternatively." The court agrees with First Union that § 42a-3-110
(d) operates to bar the claim alleged in the First Count of the complaint, as the use of the virgule or slash upon the checks in question establishes that they were payable to two or more persons alternatively or, at least, were ambiguous as to whether they were payable to Bartis Equipment or Highland Tank or both, rendering them payable alternatively. Through the application of § 42a-3-110 (d), the complaint fails to state a cause of action which is, at law, recognized under the operation of the UCC.
Research discloses no published opinions from Connecticut courts which address a check drafter's use of the virgule or slash to designate payees under circumstances such as those presented in this case. However, a review of the relevant case law from other jurisdictions supports the court's conclusion that First Union's conduct was proper under the UCC.[3] For instance, in L.B. Smith, Inc. v. Bankers TrustCompany of Western New York, 80 App.Div.2d 496,439 N.Y.S.2d 543 (App.Div. 1981), a check made payable to two parties whose names were separated by a virgule was found to have been properly paid by the bank to just one of the parties, even though one of the endorsements was a forgery. The court accepted and approved the defendant's argument that a virgule or slash drawn between the payees' names indicated that the instrument was payable in the alternative. In Dynalectron Corp. v. Equitable Trust Co., 704 F.2d 737,738-9 (4th Cir. 1983), the United States Court of Appeals for the Fourth Circuit affirmed the decision of the Maryland District court which had held, through a summary judgment, that checks which listed payees separated by a virgule were payable in the alternative, not to both parties. In Danco, Inc. v. Commerce Bank/Shore,N.A., 675 A.2d 663, 667 (1996), the court held that "a virgule when placed between two names specifically indicates that alternative indorsement is acceptable, and that payment on an indorsement is proper with the signature of either [payee]. . . ." In Mumma v. Rainier Nat.Bank, 808 P.2d 767, 768, review denied, 818 P.2d 1098 (1991), the court expressly rejected the plaintiff's argument that "a slash is often used to connote something other than "or, ' citing as examples: miles/hour, 7/20/90, 3/4, and d/b/a . . . [as well as] "M/M" . . . to mean Mr. and Mrs." (Emphasis added.)[4] Id., p. 768. The plaintiff in the present matter has raised arguments similar to those presented in Mumma v.Rainier Nat. Bank, supra: this court similarly rejects those arguments, in favor of the construction promoted by the UCC.
Highland argues that the court should deny the motion to strike based on the reasoning put forth in Barco Auto Leasing v. Bourassa, Superior Court, judicial district of Hartford/New Britain at Hartford, Docket No. CT Page 13214 558681 (February 21, 1997, Sullivan, J.). The Bourassa decision offers no compelling guidance for this court, and the plaintiff's reliance upon that opinion is inapposite, as it addressed a fundamentally dissimilar issue. The Bourassa case involved a check that listed two parties as payees, but lacked an "and," "or" or similar con to indicate whether the check required the endorsement of both parties. The drafter had used no slash or virgule in designating payees upon the instrument.[5] The plaintiff, who was one of the two named payees, brought suit against the other payee, Robert Bourassa, and against the defendant Bay Bank, which had cashed the check although it contained only Bourassa's endorsement. The court denied Bay Bank's motion for summary judgment, finding that language printed upon the check, which required all payees to endorse exactly as drawn, presented a question of contract interpretation better left for determination at trial.[6] The commercial instrument scrutinized in Bourassa not only lacked a virgule or slash, but the court's focus was upon the instrument's stated requirements for endorsement, rather than upon any independent interpretation of the manner in which the payees were designated upon the check. In the present case, there is no allegation of endorsement language like that found inBourassa, and in contrast, the listed payees are separated by a virgule. Under these circumstances, the Bourassa decision is not dispositive of the pending motion to strike.
In the absence of common law authority or other persuasive reasoning, this court finds that the statutory provision promoted by the defendant provides the most appropriate basis for interpreting the designated beneficiaries of the checks drawn by Tankworks. The language of General Statutes § 42a-3-110 (d), providing that "[i]f an instrument is payable to two or more persons alternatively, it is payable to any of them and may be negotiated, discharged, or enforced by any or all of them in possession of the instrument", clearly permits the defendant to have honored the Tankworks check upon presentation of Bartis Equipment's endorsement, without more. This interpretation of the use of the virgule or slash upon a commercial instrument pursuant to the UCC is consistent with the conclusions of the courts from other jurisdictions, noted above.
As the First Count fails to state a legally cognizable cause of action, it is accordingly stricken from the complaint.
 II. TORTIOUS INTERFERENCE WITH CONTRACT
First Union argues that the Second Count is legally insufficient it lacks allegations of impropriety adequate to support the plaintiff's claims of tortious interference with a contract. Specifically, First Union contends that in the Second Count, Highland fatally failed to CT Page 13215 allege that First Union was aware that Bartis Equipment was acting improperly by presenting the Tankworks checks without the plaintiff's endorsement. First Union further argues, as discussed in Part I, above, that its actions were authorized by the UCC. Highland counters that the Second Count is proper as drafted, because it alleges that First Union had knowledge of the joint payment agreement between Highland and Bartis Equipment, which required the endorsement of both parties. Highland argues that First Union's payment of the checks for Bartis Equipment, without the demonstration of both necessary endorsements, constitutes tortious interference with a contract. The court finds this issue in favor of the defendant.
"[Our Supreme Court] has long recognized a cause of action for tortious interference with contract rights or other business relations. . . .Blake v. Levy, 191 Conn. 257, 260, 464 A.2d 52 (1983). . . . [We have held, however, that] not every act that disturbs a contract or business expectancy is actionable. Jones v. O'Connell, [189 Conn. 648, 660-61,458 A.2d 355 (1983)]. Blake v. Levy, supra, 260-61. [F]or a plaintiff successfully to prosecute such an action it must prove that the defendant's conduct was in fact tortious. This element may be satisfied by proof that the defendant was guilty of fraud, misrepresentation, intimidation or molestation . . . or that the defendant acted maliciously. . . . [Blake v. Levy, supra], 261, quoting Kecko Piping Co.v. Monroe, 172 Conn. 197, 201-202, 374 A.2d 179 (1977). [A]n action for intentional interference with business relations . . . requires the plaintiff to plead and prove at least some improper motive or improper means. . . . Blake v. Levy, supra, 262; Kakadelis v. DeFabritis,191 Conn. 276, 279-80, 464 A.2d 57 (1983); see also Sportsmen's BoatingCorporation v. Hensley, 192 Conn. 747, 753, 755, 474 A.2d 780 (1984) (liability in tort imposed only if defendant acted maliciously). (Citation omitted; internal quotation marks omitted.) Robert S. Weiss Associates, Inc. v. Wiederlight, 208 Conn. 525, 535-36, 546 A.2d 216
(1988). The plaintiff in a tortious interference claim must demonstrate malice on the part of the defendant, not in the sense of ill will, but "intentional interference without justification.' 4 Restatement (Second), Torts § 766, comment (s) (1979)." Daley v. Aetna Life Casualty Co., 249 Conn. 766, 805, 734 A.2d 112 (1999).
As noted in Part I, the actions of First Union in depositing the checks were authorized under the UCC. It cannot reasonably be said, therefore, that First Union committed fraud, misrepresentation, intimidation or molestation by its actions. Nor can it be said, under the circumstances of this case, that First Union acted with malice, as the complaint fails to state a basis from which such inference could be drawn. See Pamela B.v. Ment, supra, 244 Conn. 308. Clearly, Highland has alleged the existence of a contract between the itself and Bartis Equipment, First CT Page 13216 Union's knowledge of this contract, and that the checks were paid despite the existence of the contract. Amended Complaint, Second Count, ¶ 3-4. Highland has also alleged that despite First Union's knowledge of the contract, it "cooperated with, enabled and encouraged Bartis Equipment to circumvent the agreement between [Highland] and Bartis Equipment and deposited checks on behalf of Bartis Equipment into Bartis's checking account." Amended Complaint, Second Count, ¶ 5. The deficiency of the Second Count, however, is Highland's failure to allege an improper motive or improper means by which First Union effectuated this payment. Given a fair reading of the allegations in the Second Count, the fact that First Union cooperated with, enabled and encouraged Bartis Equipment to circumvent the agreement fails to rise to the level of tortious conduct that would support an action grounded upon tortious interference with a contract. See, e.g., Robert S Weiss Associates, Inc. v. Wiederlight, supra, 208 Conn. 535-36 (allegation of encouragement to violate a restrictive covenant of employment insufficient to state a claim of tortious interference with contract).
The cooperation and encouragement alleged in the Second Count establish fails to establish that First Union's conduct constituted "intentional interference without justification," which is requisite to a claim based upon tortious interference with a contract. See Daley v. Aetna Life Casualty Co., supra, 249 Conn. 805. Accordingly, as the Second Count fails to state a claim upon which relief may be granted, the motion to strike this count is granted.
 III. NEGLIGENCE
First Union argues that the Third Count, sounding in negligence, should be stricken because it fails to allege any facts that establish a duty running from First Union to Highland. The plaintiff contends that General Statutes § 42a-4-103 creates a duty from First Union to Highland, as this statute which serves as the basis for the check drawer's expectation that a bank will make payment to the proper payee upon presentation of a properly endorsed check. Plaintiff's Objection to Motion to Strike (#105), p. 8. "The issue of whether the defendant owed the plaintiff a duty of care is an appropriate one for a motion to strike because the question embodies a matter of law to be decided by the court. Gordon v. BridgeportHousing Authority, 208 Conn. 161, 171, 544 A.2d 1185 (1988)." Bennett v.Connecticut Hospice, Inc., 56 Conn. App. 134, 137, 741 A.2d 349 (1999). The court finds this matter in favor of the defendant.
Section 42a-4-103 (a), upon which the plaintiff relies, provides in pertinent part that "[t]he effect of the provisions of this article may be varied by agreement, but the parties to the agreement cannot disclaim a bank's responsibility for its lack of good faith or failure to exercise CT Page 13217 ordinary care or limit the measure of damages for the lack or failure. . . ." From this language, the plaintiffs would have the court assume that § 42a-4-103 (a) imposes a duty upon First Union to use good faith and ordinary care in its dealings with Highland. In Part I, above, the court reviewed First Union's conduct in allowing Bartis Equipment to receive the benefit of a check that had been made payable to the order of "Bartis Equipment/Highland Tank". Under the UCC, as previously found, the check is properly paid to either of the named payees upon the endorsement of a single payee. Accordingly, First Union's payment of the check at issue, being proper within the purview of General Statutes § 42a-3-110 (d), cannot be found to constitute a breach of any duty it might owe to Highland. As the allegations set forth in the Third Count do not establish the defendant's negligent conduct as a matter of law, the motion to strike the Third Count must be denied, as well.
 IV. CONVERSION
First Union argues that the Fourth Count does not allege facts sufficient to state a claim based on conversion of monies rightfully owned by the plaintiff First Union argues that at best the allegations of the Fourth Count suggest that First Union allowed Bartis Equipment to convert the funds. Highland argues that it has sufficiently pleaded the conversion count, relying on Equipment Distributors, Inc. v. Charter OakBank Trust Co., 34 Conn. Sup. 606, 379 A.2d 682 (Appellate Session, 1977) and Leaksealers v. Connecticut National Bank, Superior Court, judicial district of Hartford/New Britain at Hartford, Docket No. 517952 (June 20, 1995, Hennessey, J.). The court finds this issue in favor of the defendant.
"[The Connecticut Supreme Court has] defined conversion as [a]n unauthorized assumption and exercise of the right of ownership over goods belonging to another, to the exclusion of the owner's rights. . . . It is some unauthorized act which deprives another of his property permanently or for an indefinite time; some unauthorized assumption and exercise of the powers of the owner to his harm. The essence of the wrong is that the property rights of the plaintiff have been dealt with in a manner adverse to him, inconsistent with his right of dominion and to his harm." (Internal quotation marks omitted.) Aetna Life Casualty Co. v. UnionTrust Co., 230 Conn. 779, 790, 646 A.2d 799 (1994).
As discussed in Part I, above, the court has determined that the UCC permits the payment of checks endorsed by one payee but made payable to two payees separated by a virgule or slash. In the face of this finding, the plaintiff cannot succeed on its argument that by enabling the deposit of funds to the account of Bartis Equipment, the defendant First Union CT Page 13218 performed an unauthorized act which deprived another of his property permanently or for an indefinite time, a requisite to a claim based on conversion. Aetna Life Casualty Co. v. Union Trust Co., supra,230 Conn. 790. As a matter of law, First Union cannot be liable for conversion of funds belonging to Highland because it did not act unlawfully, or in a manner inconsistent with any of the plaintiff's property interests in the Tankworks checks. Id.
Under the circumstances of this case, Highland's reliance on bothLeaksealers v. Connecticut National Bank and Equipment Distributors,Inc. v. Charter Oak Bank Trust Co. is misplaced. In Leaksealers, the court allowed the plaintiff's allegation of conversion to stand in the wake of the defendant bank's payment of checks bearing forged endorsements. That matter concerned checks which had been drawn against the plaintiff's checking account with the defendant, made payable to the order of the plaintiff's employees, vendors, and other persons, and which were endorsed and presented to the defendant bank for payment by a person who was neither authorized to endorse or present these checks. The bank accepted and cashed the checks, notwithstanding the lack of authorization from the plaintiff, and charged the plaintiff's checking account for the amount of the checks so cashed. Leaksealers v. Connecticut NationalBank, supra. The defendant bank moved to strike the complaint brought by the plaintiff Leaksealers in an effort to recoup its lost finds. TheLeaksealers court denied the motion to strike in substantial part, specifically finding that the defendant's payment of checks that contained on forged and/or unauthorized endorsements constituted wrongful acts neither sanctioned by the common law nor the UCC. Id.
The facts of the present case are markedly distinct from those presented to the Leaksealers court, rendering that decision of far less value than the plaintiff maintains. Fundamentally, the instant matter does not present any factual basis for inferring that First Union honored a forged signature of a Bartis Equipment representative. While theLeaksealers court found wrongful acts on the part of the defendant bank, this court has concluded that a drawer's use of a virgule or slash to separate two designated payees rightfully entitled the defendant First Union rightfully to make payment to one payee or the other, pursuant to the applicable provisions of the UCC. See Part I.
The decision in Equipment Distributors, Inc. v. Charter Oak Bank Trust Co., supra, is similarly unavailing to the plaintiffs in this matter, as it again dealt with a forgery, and presented factually distinguishable circumstances. The court in Equipment Distributors held that payment of a check with an unauthorized endorsement constituted conversion. Significantly, the $8000.00 check at issue in Equipment Distributors had been made payable to the named plaintiff and to another CT Page 13219 party, the plaintiff's business associate. Equipment Distributors, Inc.v. Charter Oak Bank Trust Co., supra, 34 Conn. Sup. 608. The business associate signed its own name and that of the plaintiff upon the check, without the authority to make such endorsement, thus presenting the equivalent of a forgery. In Equipment Distributors, "[t]he plaintiff as ajoint payee, was entitled to its share of the proceeds of the check. Charter Oak converted the check by collecting the proceeds on a forged endorsement and by wrongfully paying those proceeds to [the business associate]." (Emphasis added.) Id., 608-609.
In the present case, although Highland has alleged that the checks in questions were effectively drawn by Tankworks for the benefit of "joint payees", and were thus not properly endorsed upon their presentation to First Union, the court has determined that the drawer's use of the virgule or slash between the listed payees lawfully entitled the defendant bank to pay the check in the alternative. See Part I. Thus in the present matter, which is not grounded upon allegations that the cashed checks contained forged endorsements, the plaintiff has failed to set forth a lawfully sufficient claim of conversion. Accordingly, the motion to strike the Fourth Count is granted.
 V. CIVIL CONSPIRACY
First Union argues that the Fifth Count, which ostensibly sounds in civil conspiracy, should be stricken for failure to state a claim upon which relief can be granted as a matter of law. As with the prior four counts, First Union focuses upon the propriety of its actions in honoring Bartis Equipment's tender of the checks in question, which identified that entity as being lawfully entitled to the check proceeds pursuant to the designation of"Bartis Equipment/Highland Tank" as payees. First Union further submits that because Highland has failed to allege conduct that is criminal or unlawful, the Fifth Count must fail. In response, Highland argues that given a fair reading of the allegations, the count as drafted is legally sufficient in its statement of a claim based on civil conspiracy. The court finds this matter in favor of the defendant.
Our courts have long acknowledged the validity of a properly drafted cause of action which is based upon the existence of a civil conspiracy. Generally, a complaint based on civil conspiracy must include facts establishing: "(1) a combination between two or more persons, (2) to do a criminal or an unlawful act or a lawful act by criminal or unlawful means, (3) an act done by one or more of the conspirators pursuant to the scheme and in furtherance of the object, (4) which act results in damage to the plaintiff. Williams v. Maislen, 116 Conn. 433, 437, 165 A. 455
(1933)." (Internal quotation marks omitted.) Marshak v. Marshak,226 Conn. 652, 655, 628 A.2d 964 (1993); see also Jones v. O'Connell, CT Page 13220189 Conn. 648, 662, 458 A.2d 355 (1983). To sufficiently establish its cause of action based on civil conspiracy, then, the plaintiff's allegations would have to establish, or provide a proper basis for inferring, that Bartis Equipment and the defendant First Union "combined to do a criminal act or an unlawful act or a lawful act by criminal or unlawful means." (Internal quotation marks omitted.) Jones v. O'Connell, supra, 189 Conn. 662. As noted in Part I, above, however, the conduct of First Union in noting Bartis Equipment to be a party who could properly receive the entire proceeds of the Tankworks check was expressly authorized under the UCC. As such, First Union's conduct is neither criminal nor unlawful, and fails to provide a sufficient basis for a claim based on civil conspiracy. Accordingly, the motion to strike the Fifth Count is granted.
 VI. CUTPA
Finally, First Union argues that the allegations of the Sixth Count cannot form a legally sufficient basis for a CUTPA claim, as they are specifically based upon the allegations of the Second, Fourth and Fifth Counts which have each failed to set forth valid causes of action for tortious interference with contract, conversion, and conspiracy, respectively. First Union submits that as the court has found these prior counts to be insufficient, and as they have been stricken from the complaint, the derivative Sixth Count must also be stricken. In addition, First Union argues that Highland has failed to allege facts sufficient to support a finding that its conduct was immoral, unethical, oppressive or unscrupulous or in violation of common or statutory law or in violation of public policy, as is required for a CUTPA claim. Highland argues that by incorporating the tortious interference, conversion and the conspiracy counts into this Sixth Count, it has sufficiently alleged a cause of action in violation of CUTPA. The court finds this issue in favor of the defendant.
It is generally acknowledged that "CUTPA provides a private cause of action to "[a]ny person who suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment of a [prohibited] method, act or practice. . . .' General Statutes § 42-110g
(a)." Spector v. Konover, 57 Conn. App. 121, 133, 747 A.2d 39 (2000). "It is well settled that in determining whether a practice violates CUTPA we have adopted the criteria set out in the cigarette rule by the federal trade commission for determining when a practice is unfair: (1) [W]hether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise — in other words, it is within at least the penumbra of some common law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, CT Page 13221 or unscrupulous; (3) whether it causes substantial injury to consumers, [competitors or other business persons]. . . . All three criteria do not need to be satisfied to support a finding of unfairness. A practice may be unfair because of the degree to which it meets one of the criteria or because to a lesser extent it meets all three." (Internal quotation marks omitted.) Aetna Life Casualty Co. v. Union Trust Co., 230 Conn. 779,790 736 A.2d 824 (1999).
As noted in Part I, above, First Union's conduct in honoring the checks in question was lawful, proper, and authorized under the UCC. Because those actions were lawfully permissible, pursuant to the accepted codification of commercial practices which is designed to facilitate the fair and efficient transaction of business in this state, First Union's conduct cannot reasonably be viewed as immoral, unethical, oppressive, or unscrupulous. See Aetna Life Casualty Co. v. Union Trust Co., supra,230 Conn. 790; Part I, above. Similarly, First Union's conduct does not violate, but rather conforms with the public policy affecting the use of the virgule or slash in the designation of check payees, as embodied in General Statutes § 42a-3-110 (d). Hartford Electric Supply Co. v.Allen-Bradley Co., supra, 250 Conn. 367-68. While the defendant's practice in honoring the Tankworks check as written may, indeed, have caused Highland to sustain a loss, the bank's conduct cannot reasonably have been seen to constitute the use or employment of a prohibited method, act or practice. See General Statutes § 42-110g (a); Spectorv. Konover, supra, 57 Conn. App. 133. As such, First Union's acts, alleged in the Sixth Count, do not satisfy the elements of a CUTPA claim, as a matter of law. For these reasons, the motion to strike the Sixth Count is granted.
 VII. CONCLUSION
Where a check is made payable to more than one payee and the payees' names are separated by a virgule, or slash, the check may lawfully be interpreted as having been made payable in the alternative, allowing payment to be made upon the presentation of a proper endorsement from either designated payee. Therefore, under the circumstances of this case, when presented with the Tankworks checks for payment, First Union properly paid the checks to Bartis Equipment, even though the checks had only that designated payee's endorsement. All of the counts set forth in Highland's complaint are dependent on the alleged impropriety of First Union's conduct in paying the checks in question to Bartis Equipment alone, to the exclusion of the plaintiff As the defendant bank's payment of the checks in question was proper, however, each count of Highland's complaint sets forth a claim which is legally insufficient. Accordingly, the court is constrained to grant the defendant's motion which strikes the entirety of the amended complaint. CT Page 13222
WHEREFORE, the motion to strike submitted by the defendant First Union National Bank under date of May 15, 2000 (#103) is hereby GRANTED.
BY THE COURT,
N. Rubinow, J.